(748 P.2d 896)

No. 60,257

Norman L. Knight and Rebecca Knight, *Appellants,* v. Douglas B. Myers, *Appellee.*

Opinion filed January 7, 1988.

*Lelyn J. Braun,* of Lelyn J. Braun, Chartered, of Garden City, for the appellants.

*Amy S. Lemley,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellee.

Before Brazil, P.J., Six, J., and Jack L. Burr, District Judge, assigned.

Six, J.: Plaintiff appellants, Norman and Rebecca Knight (the Knights), appeal the trial court's decision sustaining appellee Douglas B. Myers' motion for summary judgment. The trial court held plaintiffs' malpractice claims against attorney Myers were barred by the statute of limitations. This court finds no error and affirms.

The issues are: (1) When the Knights' alleged action for legal malpractice accrued; and (2) whether the trial court erred in granting summary judgment for defendant Myers.

In July 1980, the Austin Pool Company (Austin) installed a swimming pool in the back yard of appellants, Norman and Rebecca Knight. Austin ran a discharge hose from the pool onto property owned by Donald and Lucille Laukala and water from the pool drained onto the Laukala property. Donald Laukala's parents, Mr. and Mrs. Nestor Laukala (the senior Laukalas), lived on this property.

On July 2, 1981, Donald Laukala filed a nuisance action against the Knights due to the water from the swimming pool draining onto his property. The Knights prepared numerous pro se pleadings in response to Laukala's nuisance action, including a motion for summary judgment, a motion for a restraining order, a motion to make Donald Laukala's parents co-plaintiffs, an answer, a pleading entitled "lis pendens," and a pleading entitled "countersuit."

Throughout the briefs and in the record the Knights' claim against the senior Laukalas is referred to as a "counterclaim" or "countersuit." During oral argument, counsel agreed that the pro se pleadings attempted to state either a separate claim or a third-party claim.

In their "countersuit," the Knights alleged that the senior Laukalas laughed and swore at the Knights, chipped the Knights' driveway, built an "illegal fence," and tried to destroy the Knights' van. The Knights also included in this pleading a malicious prosecution claim against Glenn Kerbs, the attorney representing Donald and Lucille Laukala in the nuisance lawsuit filed against the Knights.

Personnel of the clerk of the district court would not, for some unexplained reason, accept the Knights' pro se pleadings. On July 10, 1981, the Knights hired attorney Myers to represent them in the Laukala case.

Myers filed an amended answer and a request for a specified amount of money damages on July 14, 1981. On July 20, 1981, Myers sent a letter to Norman Knight attempting to clarify the terms of his employment. The letter reads as follows:

"Dear Norman:

"In reviewing the materials which you gave me, I felt perhaps I should clarify the terms of my employment. It is my understanding that I am to proceed to defend the action brought by Mr. Laukala, but that you do not wish to pursue the counter-suit or the other issues which you raised in the materials which you filed, including the Motion for Summary Judgment and a Restraining Order. If this was not your understanding, please let me know at your early convenience.

"Sincerely yours,

"Douglas B. Myers"

Mr. Knight received and read this letter. Mr. Knight testified that he discussed this matter with Myers and instructed him to proceed with an action against Austin and against the senior Laukalas. On August 13, 1981, Myers filed a action against Austin on behalf of the Knights.

On December 1, 1981, Myers sent a letter to Mr. Knight, informing him that Myers was terminating his employment relationship with the Knights. On December 14, 1981, Myers formally withdrew from the case involving the Laukalas and the case involving Austin.

The pretrial conference in the Laukala case was held on January 8, 1982, and at that time the Knights had hired attorney Barry Gunderson to represent them in the Laukala case and in the Austin Pool Company case. After the pretrial conference in the Laukala case, Mr. Knight wrote a letter to T. J. Carney, the attorney provided by their homeowners' insurance to defend them.

"Dear Mr. Carney:

"It was nice to visit with you and the other Insurance Attorney at the Courthouse today following our Pre-trial Hearing. We appreciated the manner in which you Gentlemen Represented us, along with our personal Attorney, Mr. Barry Gunderson. We were very pleased with the obvious details brought out during the Hearing.

"We want to thank you for bringing out the fact that we should not release our Counter-Claims against Attorney Glenn Kerbs. We will surely relate this information to Mr. Gunderson, as these are most assuredly our feelings, also. We feel that Mr. Kerbs should have never filed this action, and since he did file such a malicious prosecution, he should pay for his misconduct. We shall make certain that Mr. Gunderson understands these to be our feelings.

"We shall request that Mr. Gunderson properly Serve Mr. Kerbs, *along with properly Serving Mr. and Mrs. Nester Laukala. We felt proper Service had been made, but from our observation in the Courtroom today, it appears that our former Attorney, Mr. Douglas Myers, had failed to do his home-work in this area.*" (Emphasis added.)

A copy of this letter was filed in the district court's file in the Laukala case.

Knight testified that on the date of this letter, he knew that Myers had not properly served the Laukalas and that Myers had not pursued the countersuit against the Laukalas.

Defendant Gunderson took the Knights' case against Austin Pool Company to trial and recovered a judgment of $1,000.00. Gunderson formally withdrew from representing the Knights on April 6, 1983. As of June 1, 1983, when the Knights re-filed their action against the Laukalas, they knew that Gunderson had never followed up with any service on the Knights' suit against the Laukalas.

Sometime between June 1, 1983, and December 19, 1983, Lelyn Braun, the Knights' present attorney, began representing the Knights in their suit against the Laukalas. Apparently the suit was dismissed on May 21, 1984, on the basis that it was barred by the statute of limitations. However, in their appellate brief, the Knights assert that the ruling dismissing their claim against the Laukalas was filed December 19, 1984.

The Knights filed their legal malpractice action against defendant Myers on August 29, 1985.

A pretrial conference was held on May 23, 1986. The pretrial order entered as a result of this conference listed the Knights' allegations against Myers as

"an act of malpractice and negligence in failing to file a counterclaim on behalf of [the Knights] and against Mr. and Mrs. Nestor Laukala, and [failure] to issue a summons on the pro se pleadings . . . thereby depriving [the Knights] of an effective counterclaim in that action which was later barred by Court ruling on the basis of statute of limitations."

Myers filed a motion for summary judgment on September 11, 1986, alleging that the Knights' claims against him were barred by the statute of limitations. The trial court granted the motion and plaintiffs appeal.

## WHEN AN ACTION FOR LEGAL MALPRACTICE ACCRUES

Against defendant Myers, their former attorney, the Knights made both contract and tort claims. The Knights claimed (1) Myers failed to file a counterclaim, and (2) Myers was negligent in failing to file that claim and in failing to issue summons on pro se pleadings prepared by the Knights. On appeal, the Knights state that "[a]s the pleadings in this case reflect, this action is brought in tort and is one limited to two years." The Knights have waived their contract claim and are only pursuing their tort claim on appeal.

Because the Knights' action is in tort, the controlling statute of limitations is K.S.A. 60-513.

K.S.A. 60-513(b) specifically states that a tort action accrues either at the time at which (1) the act giving rise to the cause of action first causes substantial injury, or (2) if the fact of the injury is not reasonably ascertainable, the time at which the injury does become reasonably ascertainable to the injured party. The statutory rules for determining when a cause of action for tort accrues have been specifically applied in tort actions for legal malpractice. See *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 249-50, 655 P.2d 465 (1982), *rev. denied* 232 Kan. 876 (1983) (non-lawyer); *Chavez, Executrix v. Saums*, 1 Kan. App. 2d 564, 565, 571 P.2d 62, *rev. denied* 225 Kan. 843 (1977).

The Knights' cause of action against the senior Laukalas must have accrued on or before the Knights filed their pro se pleadings on July 8, 1981. In the pro se pleadings, the Knights attempted to sue the senior Laukalas. Plaintiffs contend that Myers breached a duty in either (1) not issuing a summons against the senior Laukalas or in (2) not advising the Knights of the statute of limitations.

The Knights could first have filed, and prosecuted, an action against Myers at any time after the statute of limitations ran on their claims against the senior Laukalas.

As a general rule, a cause of action accrues as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which plaintiff could first have filed and prosecuted an action to a successful conclusion. *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 87, 716 P.2d 575 (1986). According to *Pancake House,* depending upon the facts and circumstances of each case, at least four theories can apply in Kansas when determining the accrual of a cause of action for legal malpractice: (1) the occurrence rule, (2) the damage rule, (3) the discovery rule, and (4) the continuous representation rule.

In *Pancake House,* plaintiff Pancake House was suing defendant attorneys for legal malpractice after defendants, who had been counsel for Pancake House for approximately 20 years, chose to represent the individual interests of certain stockholders against Pancake House. The Supreme Court held Pancake House did not suffer any damages until it had to defend against the suit filed by its former attorneys. Although the alleged malpractice occurred when the suit was filed on October 16, 1980, it was not until the suit was concluded with the filing of the journal entry on September 7, 1982, that Pancake House "suffered sufficient damages for the tort to accrue." 239 Kan. at 88.

Under the facts of the present case, we hold that the Knights' cause of action did not accrue until they reasonably should have discovered the material facts essential to their cause of action against the defendant Myers. K.S.A. 60-513 provides a cause of action based on tort accrues when substantial injury occurs, unless the injury was not reasonably ascertainable until sometime after the negligent act occurs. When substantial injury is not immediately ascertainable, the cause of action accrues when the injury becomes "reasonably ascertainable." "Substantial injury" has been defined as "actionable injury." *Roe v. Diefendorf,* 236 Kan. 218, 223, 689 P.2d 855 (1984). An injury is reasonably ascertainable when the plaintiff knew or could reasonably have been expected to know of the alleged negligence. *Hecht v. First National Bank & Trust Co.,* 208 Kan. 84, 92, 490 P.2d 649 (1971).

The district court ruled that plaintiffs' cause of action accrued on January 8, 1982, the date of the pretrial conference in *Laukala v. Knight,* 81-C-159. The Knights had retained a new attorney, Barry Gunderson, by that date.

Although we agree with the district court's ruling that this action is barred by the statute of limitations, we disagree with the district court's conclusion that the Knights' resulting injury was sufficiently ascertainable to them on January 8, 1982, to justify filing an action for damages. The alleged injury or damage to the Knights did not occur until a later date. In the present case, the Knights could not have filed and prosecuted their cause of action against attorney Myers on January 8, 1982. They had suffered no ascertainable damage at that time. The Knights were not injured until the statute of limitations ran on their claim against the senior Laukalas which would have been no later than July 8, 1983. On July 8, 1983, their claim against the senior Laukalas was barred. At this time, the Knights could have sustained injury as a result of defendant Myers' alleged malpractice.

## SUMMARY JUDGMENT

The Knights contend the trial court erred in granting summary judgment for defendant Myers on the basis that the statute of limitations had run on their claim.

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, Syl. ¶ 5, 695 P.2d 444 (1985). Summary judgment may be proper in a statute of limitations case if there is no dispute or genuine issue as to the time when the statute commenced to run.

We do not know when the statute of limitations ran on the Knights' claim against the Laukalas. However, we do know that the alleged harassment and destruction of property occurred on or before July 8, 1981, the date on which the Knights filed their "countersuit" against the senior Laukalas for these alleged acts. Because the "countersuit" alleged that the Laukalas committed various torts, the statute of limitations on the claim would have run two years from that date, or July 8, 1983.

Everyone is presumed to know the law, *Flott v. Wenger Mixer Manufacturing Co.*, 189 Kan. 80, 367 P.2d 44 (1961), including relevant statutes of limitation. See *Travelers Insurance Com-*

*pany v. Warren,* 447 S.W.2d 698, 702 (Tex. Civ. App. 1969). The Knights are charged with knowledge of the statute of limitations and constructively knew that on or before July 8, 1983, the statute of limitations had passed on their claim against the senior Laukalas. Consequently, the Knights constructively knew that Myers had injured them due to his alleged failure to file the "countersuit" or have summons issued on their "countersuit." Because the Knights constructively knew on or before July 8, 1983, that they had suffered substantial injury, their claim against Myers, filed August 29, 1985, is time-barred. See *Banton v. Marks,* 623 S.W.2d 113, 115 (Tenn. App. 1981).

The Knights filed a response to Myers' motion for summary judgment. However, the response did not set forth "in separately numbered paragraphs (corresponding to the numbered paragraphs of movant's memorandum or brief) a statement whether each factual contention of movant is controverted, and if controverted, a concise summary of conflicting testimony or evidence," as required by Supreme Court Rule 141, (1987 Kan. Ct. R. Annot. 79). The trial court adopted Myers' statement of uncontroverted facts. We agree with the trial court's treatment of the summary judgment motion. It is not the trial court's duty to seek out the record. Rather, counsel is required to designate the portions of the record which support that party's position. On opposing a motion for summary judgment, a party must come forward with something of evidentiary value to establish a material dispute of fact. *Slaymaker v. Westgate State Bank,* 241 Kan. 525, 531, 739 P.2d 444 (1987); *Crooks v. Greene,* 12 Kan. App. 2d 62, 736 P.2d 78 (1987); Supreme Court Rule 141(b). See K.S.A. 1987 Supp. 60-256(e).

## SUBSEQUENT COUNSEL

Defendant Myers terminated his employment with plaintiffs on December 1, 1981. On December 14, 1981, he formally withdrew from cases 81-C-159 (Donald Laukala's case against the Knights) and 81-C-184 (the Knights' case against Pacific Pools and Austin Pool Co.). By the time of the pretrial conference on January 8, 1982, in case 81-C-159, plaintiffs had hired attorney Barry Gunderson to represent them. Gunderson proceeded to handle case 81-C-184 which resulted in a jury trial and a verdict in favor of the Knights. Gunderson withdrew from representing

the Knights on April 6, 1983. On May 4, 1983, a third attorney, Bob Feldt, entered his appearance in case 81-C-159 on the Knights' behalf. Feldt withdrew shortly thereafter. At some point between June 1, 1983, and December 19, 1983, plaintiffs' present attorney, Mr. Braun, began representation of the Knights.

The two-year statute of limitations on the Knights' claim against the senior Laukalas may not have run until July 8, 1983, eighteen months after defendant Myers formally withdrew as counsel for the Knights. The attorney-client relationship between defendant Myers and plaintiffs terminated on December 14, 1981.

"An attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action." *Steketee v. Lintz, Williams & Rothberg*, 38 Cal. 3d 46, 57, 210 Cal. Rptr. 781, 694 P.2d 1153 (1985). See also *Frazier v. Effman*, 501 So. 2d 114, 116 (Fla. Dist. App. 1987) (attorney's failure to file medical malpractice claim prior to expiration of statute of limitations not legal malpractice when attorney ceased to represent the client before the statute passed and was replaced by other counsel); *Harvey v. Mackay*, 109 Ill. App. 3d 582, 587, 440 N.E.2d 1022 (1982) (attorney's failure to file lawsuit prior to expiration of statute of limitations not malpractice when attorney withdrew from representation before statute of limitations passed); *Hunt v. Kolken*, 49 App. Div. 2d 747, 372 N.Y.S.2d 698 (1975), *aff'd* 40 N.Y.2d 949, 358 N.E.2d 1038 (1976) (attorney who is discharged by client and forwards file to client's new attorney not liable for malpractice because of subsequent mistakes in a client's litigation).

The Knights had at least two and possibly three attorneys between the date Myers withdrew and July 8, 1983.

## DUTY TO INFORM

The Knights contend that Myers had a duty to inform them that there was a statute of limitations running on their alleged claims against the Laukalas. The "duty to inform" contention was emphasized at oral argument as the Knights' rationale for reversal of the summary judgment motion. This contention was neither contained in the pretrial order nor argued in the court below. Consequently, it should not be considered by this court on

appeal. *In re Hamstead,* 11 Kan. App. 2d 527, 528, 729 P.2d 461 (1986).

Affirmed.