(799 P.2d 94)
No. 64,211

RICHARD T. BICK, *Appellee*, v. PEAT MARWICK AND MAIN, *Appellant.*

Opinion filed September 21, 1990.

*Christopher W. O'Brien* and *Calvin D. Wiebe*, of Triplett, Woolf & Garretson, of Wichita, and *Andrew D. Hurwitz* and *Helen Perry Grimwood*, of Meyer, Hendricks, Victor, Osborn & Maledon, of Phoenix, Arizona, for the appellant.

*John W. Johnson*, of Render, Kamas & Hammond, of Wichita, for the appellee.

Before LARSON, P.J., BRISCOE, J., and HARRY G. MILLER, District Judge Retired, assigned.

BRISCOE, J.: Defendant Peat Marwick and Main (Peat Marwick) appeals a jury verdict awarding plaintiff Richard Bick $170,250 in an accounting malpractice case. Our reference throughout this opinion to Peat Marwick will also encompass its predecessor corporation, which merged with Peat Marwick in 1987.

In 1981, Bick resigned his position as president of Koch Exploration. As part of the resignation package, he was entitled to ten annual payments of $84,461 from the Koch Industries shadow stock program and was required to sell Koch his shares of common stock. Upon the advice of Alvin Marcus, a partner with Peat Marwick, Bick sold the stock in October 1981 and received $884,115 for the common stock and $84,461 from the shadow stock program.

In late December, Peat Marwick prepared fourth quarter estimated tax payments for Bick totalling $249,065, which Bick paid. In early 1982, Peat Marwick prepared Bick's 1981 tax returns but did not include the sale of the common stock or the shadow stock payment. As a result, Bick received a tax refund of $194,793.

In 1986, the IRS audited the Koch Industries shadow stock program. Peat Marwick discovered the error in Bick's 1981 tax returns and prepared amended returns. On August 15, 1986, Bick filed the amended returns, paying additional tax of $227,588 and statutory interest totalling $170,662. Bick received a "30-day letter" from the IRS dated March 2, 1987, proposing imposition of a negligence penalty pursuant to I.R.C. § 6653(a) (1986). On November 3, 1987, the IRS issued a Notice of Deficiency to Bick assessing negligence penalties in the amount of $29,600.40. Bick filed a formal protest but ultimately conceded the negligence penalties.

On February 19, 1988, Bick filed this case against Peat Marwick, alleging accounting malpractice. The jury found Peat Marwick to be 75 percent at fault. The jury also found Bick did not know or should not have known of the omission in his 1981 tax returns before February 18, 1986, the date Peat Marwick discovered the omission and reported it to Bick.

Peat Marwick raises three issues: (1) Whether Bick's action is barred by the statute of limitations; (2) whether Bick can recover a negligence penalty from a defendant tax preparer; and (3) whether the court erred in prohibiting evidence of Bick's prior conviction.

## 1. Statute of Limitations

K.S.A. 1989 Supp. 60-513(a)(4) provides a two-year statute of limitations for a cause of action alleging negligence. Subsection (b) states the Kansas discovery rule:

"Except as provided in subsection (c), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

Peat Marwick relies on both prongs of 60-513(b). First, it contends Bick's negligence cause of action accrued on April 16, 1982, because he suffered substantial injury at that point. Second, it argues Bick's injury was reasonably ascertainable when he signed his tax returns on April 15, 1982. It contends Bick should have

known as a matter of law that Peat Marwick was negligent in preparing the tax returns on April 15, 1982, and that he was injured and had an actionable claim on April 16 when the statutory interest penalty began accruing.

Peat Marwick cites *Roe v. Diefendorf*, 236 Kan. 218, 689 P.2d 855 (1984), for the proposition that Bick incurred an actionable injury on April 16. In *Roe*, plaintiff sued Diefendorf for negligently driving her car into his motorcycle. Diefendorf argued the two-year statute of limitations had run because Roe filed the petition more than two years after the accident. The trial court accepted Roe's argument that the statute of limitations was tolled because his doctor did not detect a significant injury until over one year after the accident. The Supreme Court reversed, stating it is the discovery of the *fact* of injury rather than the *extent* of injury that begins the statute of limitations running. The issue in *Roe* was whether 60-513(b) requires the injured party to know the extent of the injury before the statutory time limitation begins running. In the present case, the issue is not whether Bick knew the extent of his injury prior to February 18, 1986. The issue is whether he knew or had reason to know he had been injured at all. *Roe* is therefore distinguishable from the present case.

Peat Marwick cites *Knight v. Myers*, 12 Kan. App. 2d 469, 748 P.2d 896 (1988), for the proposition that Bick should have known of the injury "as a matter of law." *Knight* was a legal malpractice case in which plaintiffs sued their attorney, alleging he failed to advise them that their cause of action in the underlying case was subject to a statute of limitations. The trial court ruled their action was time barred and this court agreed. Applying the discovery rule set forth in *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986), the court held the plaintiffs' cause of action accrued when they reasonably should have discovered the material facts necessary to prove their claim. They suffered actionable injury when the statute of limitations in the underlying case ran. The court then ruled plaintiffs had constructive knowledge of the statute of limitations because "[e]veryone is presumed to know the law." *Knight*, 12 Kan. App. 2d at 475. Thus, the legal malpractice claim filed more than two years after this constructive knowledge of the injury was time barred.

Peat Marwick contends Bick should be charged with constructive knowledge of I.R.C. § 6601(a) (1986). That code section provides for daily accrual of interest applied to income tax underpayments. The interest begins to accrue on the date the tax return and payment are due. Peat Marwick contends that, under *Knight*, the court must hold as a matter of law that Bick's first substantial injury (the accruing of an interest penalty on April 16, 1982) was reasonably ascertainable on April 15 because Bick constructively knew the provisions of § 6601(a). This contention is not persuasive. A taxpayer's constructive knowledge that potential interest can be assessed on underpayment of income tax does not equate to knowledge of the negligent act that would trigger the taxpayer's liability for interest.

Here, the jury was asked:

"Do you find that plaintiff knew, or reasonably should have known any time before February 18, 1986, that his 1981 income tax return did not include sums received by him from Koch Exploration that he received in 1981?"

The jury responded: "No." Special interrogatories are permitted in Kansas and the decision to submit them to the jury rests in the sound discretion of the trial court. K.S.A. 60-249(b); *Schaeffer v. Kansas Dept. of Transportation*, 227 Kan. 509, 520, 608 P.2d 1309 (1980). Further, failure to object to the special question precludes appellate review. See *Hall v. High*, 214 Kan. 489, 490, 520 P.2d 1283 (1974). In the present case, Peat Marwick failed to object to the special interrogatory but, on appeal, asks this court to disregard as a matter of law the interrogatory and the jury's response to it.

Where there is evidence in dispute as to when the plaintiff's injury first became reasonably ascertainable, the question is one for the trier of fact. *Uhock v. Sleitweiler*, 13 Kan. App. 2d 621, 623, 778 P.2d 359 (1988). The standard of review of findings of fact is well established. The reviewing court must determine if the findings are supported by substantial competent evidence and are sufficient to support the trial court's conclusions of law. The appellate court must accept as true the evidence and all inferences to be drawn from the evidence which support the findings of the jury. *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 19-20, 774 P.2d 919 (1989).

The jury found Bick did not know and had no reason to know Peat Marwick failed to include the stock sale and shadow stock payment in his 1981 tax returns prior to February 18, 1986. The evidence shows Bick contacted Peat Marwick in late summer of 1981 and asked for advice. Peat Marwick told him to sell the stock in 1981 and billed Bick for that advice. He sold the stock in October and Peat Marwick prepared fourth quarter estimated tax payments to reflect the income. Bick paid the estimated tax and Peat Marwick's bill for the services. At Peat Marwick's request, Bick then prepared a listing of the rest of his income and expenses for 1981. Bick stated he did not include the income from the stock sale or the shadow stock payment in this listing because Peat Marwick already had that information. Peat Marwick prepared the 1981 tax returns based on Bick's list and sent the returns to Bick to sign and file. Bick noted a Peat Marwick partner had signed the returns and relied on his expertise.

Peat Marwick continued to do Bick's tax work until 1986. It was not until July 1986 that Bick was told of the omission in his 1981 tax returns. As a matter of fact, in December 1983, the IRS assessed additional tax of $796.66 on Bick's 1981 return after an audit of automobile use at Koch and the omission at issue here was not then discovered. There was substantial competent evidence to support the jury's finding that Bick did not know and had no reason to know of the omission prior to February 18, 1986.

Peat Marwick also contends Bick's stipulation to the taxpayer negligence penalty establishes as a matter of law that Bick knew or had reason to know of the omission on April 15, 1982. The argument is that, by stipulating to the penalty, Bick is estopped from denying he had reason to know of the omission on April 15, 1982. We disagree. Stipulations in tax court cannot be used against any party in any other case or proceeding. Tax Ct. R. 91(e), 24A Federal Tax Coordinator 2d 52,582 (1990). Further, in Kansas, a plea of collateral estoppel may be asserted only by a person who was a party or in privity with a party to the prior action. *McDermott v. Kansas Public Serv. Co.*, 238 Kan. 462, 473, 712 P.2d 1199 (1986). Bick is not estopped from denying he had reason to know of the omission on April 15, 1982, because

he conceded the taxpayer negligence penalty issue in a different proceeding.

Peat Marwick argues the court's instruction to the jury requiring it to find Bick at least one percent at fault because of his stipulation in tax court to the taxpayer negligence penalty establishes as a matter of law that Bick knew or had reason to know of the omission on April 15, 1982. This instruction is in direct conflict with the nonbinding provision of Tax Court Rule 91(e) and the doctrine of collateral estoppel, and is, therefore, erroneous on its face. Bick has not filed a cross-appeal on this issue; thus, the instruction does not constitute reversible error. See *Pilcher v. Board of Wyandotte County Comm'rs*, 14 Kan. App. 2d 206, 213, 787 P.2d 1204 (1990) (errors in jury instructions are not reversible errors unless they prejudice the appealing party). However, Bick's failure to appeal the issue does not render the instruction valid and does not establish as a matter of law that Bick knew or had reason to know of the omission when the tax returns were filed.

Bick argues the statute of limitations should not commence until a negligence penalty is assessed. Bick cites a number of other jurisdictions in support of his contention. *Moonie v. Lynch*, 256 Cal. App. 2d 361, 64 Cal. Rptr. 55 (1967); *Feldman v. Granger*, 255 Md. 288, 257 A.2d 421 (1969); *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657 (1984); *Chisholm v. Scott*, 86 N.M. 707, 526 P.2d 1300 (1974). Further, Bick argues that, until he is assessed a tax penalty, he has not sustained an injury and is not obligated to file an action until liability is established. This contention has merit.

To recover a negligence claim, the plaintiff must show a causal connection between the duty breached and the injury received, and the plaintiff must show he was damaged by the negligence. *Hammig v. Ford*, 246 Kan. 70, 73, 785 P.2d 977 (1990). Negligence which does not result in injury forms no basis for a damage action. *Garrison v. Hamil*, 176 Kan. 548, 551, 271 P.2d 307 (1954). Prior to assessment of a negligence penalty, the plaintiff cannot be injured and therefore has no cause of action. If the plaintiff commences the action prior to the date of assessment, the defendant can properly contend the action is premature. This rule is consistent with Kansas case law.

In *Price, Administrator v. Holmes*, 198 Kan. 100, 422 P.2d 976 (1967), plaintiff sued for faulty execution of a will. Defendant was a banker who held himself out as an expert in the drafting and execution of wills. Plaintiff was the administrator for the estate of the beneficiary of a man who had defendant prepare and supervise the execution of his will. The will was declared invalid, and plaintiff filed suit within two years of that decision. The court held the statute of limitations commenced to run when the will was found invalid because plaintiff suffered no damages until that point.

In *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972), plaintiffs were the survivors of two deceased employees of an employer that did not have workers compensation insurance. Defendant insurance agent had falsely informed the employer it had coverage. Plaintiffs unsuccessfully sought workers compensation benefits and then filed suit. The Kansas Supreme Court held the case was controlled by *Price*. As in *Price*, plaintiffs were prevented from suing before resolution of the prior suit because they suffered no damages until they were denied workers compensation benefits.

In *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 655 P.2d 465 (1982), *rev. denied* 232 Kan. 876 (1983), defendant falsely represented himself as an attorney and arranged to transfer plaintiffs' land to a third party with the right to repurchase by plaintiffs. After a lawsuit quieted title in the third parties, plaintiffs sued defendant for legal malpractice. The court held the cause of action accrued after resolution of the quiet title action because plaintiffs were not damaged until they lost their interest in the land.

Bick could not commence his action against Peat Marwick until he had been damaged by its negligent conduct. Assessment of the negligence penalty is the essential factor completing the wrong and the statute of limitations cannot commence until the tort complained of is completed. In this case, Bick was not damaged by payment of the tax deficiency and interest accrued because these monies were already owed to the IRS. Bick was not damaged by his tax preparer's malpractice until such time as the negligence penalty was assessed. Bick did not suffer substantial injury until he was assessed a negligence penalty on November

3, 1987. Bick's action was filed well within the two-year statute of limitations.

## 2. Negligence Penalty

Peat Marwick contends the trial court erred in allowing an award of damages for assessment of the negligence penalty by the IRS. First, it argues Bick's negligence was the sole cause of the penalty as a matter of law. Second, it contends an award of damages for civil penalties incurred contravenes public policy.

The trial court instructed the jury to consider damages as to specific items and the verdict form listed the negligence penalty as one item of damage. Peat Marwick did not object and, thus, appellate review is precluded unless the instruction was clearly erroneous. K.S.A. 60-251(b); *Pilcher*, 14 Kan. App. 2d at 213.

I.R.C. § 6653(a) (1986) provides:

"(1) In general. — If any part of any underpayment ′. . . is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

"(2) Additional amount for portion attributable to negligence, etc. — There shall be added to the tax . . . an amount equal to 50 percent of the interest payable under section 6601 —

"(A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1), and

"(B) for the period beginning on the last date prescribed by law for payment of such underpayment . . . and ending on the date of the assessment of the tax."

This section permits assessment of a penalty whenever an underpayment "is due to negligence or intentional disregard of rules or regulations." I.R.C. § 6653(a)(1). Negligence is determined by the reasonable, prudent person standard (*Zmuda v. C.I.R.*, 731 F.2d 1417, 1422 [9th Cir. 1984]), with the taxpayer bearing the burden of establishing that assessment of the penalty was erroneous (*Hall v. C.I.R.*, 729 F.2d 632, 635 [9th Cir. 1984]). The statute does not state whose negligence causes the assessment nor does it provide for a comparison of fault. Peat Marwick contends it is *only* the taxpayer's negligence which is considered in assessing the penalty.

The United States' Supreme Court has held that, while hiring an attorney or accountant does not insulate the taxpayer from

negligence penalties, the taxpayer's good faith reliance on professional advice may resolve the matter between the IRS and the taxpayer. *United States v. Boyle*, 469 U.S. 241, 250-51, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985). Thus, an independent negligence action is not necessarily precluded by the statute.

Our research has revealed no cases dealing with the issue of a claim of indemnification for penalties assessed pursuant to § 6653(a). However, in cases involving penalties assessed pursuant to § 6672, a code section dealing with willful failure to collect or pay over withholding taxes, the federal courts have split on whether the law permits a claim of indemnification. Several courts hold there is no federal right of indemnification under § 6672 and, in the absence of specific statutory authority, there is no federal common-law right of indemnification. *Sinder v. United States*, 655 F.2d 729 (6th Cir. 1981); *Rice v. Pearce*, 574 F. Supp. 23 (S.D. Iowa 1983). None of these cases considered whether such a right can arise under state law. One case held public policy militates against allowing a right of indemnification to someone who has acted willfully. *Rebelle v. United States*, 588 F. Supp. 49, 51 (M.D. La. 1984). That court did state it is at least possible a claim for indemnification may be made by one liable for penalties under § 6653, however. 588 F. Supp. at 52 n.5. Finally, two courts stated, as long as the claim for indemnification is brought in a subsequent proceeding separate from the penalty action, a claim for indemnification is permissible. *Schoot v. United States*, 664 F. Supp. 293, 298 (N.D. Ill. 1987); *Swift v. Levesque*, 614 F. Supp. 172, 177 (D. Conn. 1985). From this research, it appears the majority of the federal courts would permit a separate negligence action for indemnification for penalties assessed under § 6653(a), to the extent it is allowed under state law. The issue then is whether Kansas law permits a claim for indemnification in this situation.

In Kansas, claims of indemnity are allowed when a contract of indemnity is implied. The claim usually arises when one party without fault is compelled to pay for the tortious acts of another. The indemnitee has a right of action against the indemnitor. See *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 642, 666 P.2d 192 (1983). Furthermore, comparative implied indemnity applies when one party settles the plaintiff's entire claim without

participation from the other tortfeasor. This total settlement creates an equitable claim for recovery of the other tortfeasor's proportionate fault share of the settlement amount. See *Kennedy v. City of Sawyer*, 228 Kan. 439, 460, 618 P.2d 788 (1980). The doctrine of implied indemnity is particularly applicable in cases of liability of a principal in respondeat superior for the acts of an agent or employee. *Kennedy*, 228 Kan. at 455. Thus, if Bick has discharged a duty which is owed by him, but which as between himself and Peat Marwick should have been at least in part discharged by Peat Marwick, his claim of implied indemnity is valid. The central issue is whether Peat Marwick's negligent act is a proximate cause of the imposition of the negligence penalty.

Peat Marwick contends Bick could not have discharged a liability owed by it because Bick's negligence was the sole cause of the penalty. It cites several cases which hold the issue of the tax preparer's negligence is irrelevant in assessing the penalty and does not excuse the taxpayer from payment. See *Metra Chem. Corp.*, 88 T.C. 654, 662 (1987); *Magill v. Comm'r*, 70 T.C. 465, 479 (1978), *aff'd* 651 F.2d 1233 (6th Cir. 1981); *Pritchett v. Comm'r*, 63 T.C. 149, 174 (1974). While it is true the tax preparer's negligence may not exonerate the taxpayer from his own negligence, none of these cases hold that the taxpayer cannot recover from the tax preparer the proportionate share of a penalty resulting from the tax preparer's negligence. In fact, the United States Supreme Court has stated that, although the taxpayer cannot avoid the penalty, he may have a cause of action against the tax preparer based on his good faith reliance on the tax preparer's expertise. *United States v. Boyle*, 469 U.S. at 250. Bick's negligence is not, as a matter of federal law, the sole cause of the negligence penalty.

Next, Peat Marwick contends the purpose of the negligence penalty is to penalize the taxpayer for his own negligence and to shift the penalty to others would undermine tax enforcement. In support of this contention, it cites prior cases prohibiting a shift of criminal penalties from one person to another. See *Herrman v. Folkerts*, 202 Kan. 116, 120, 446 P.2d 834 (1968) (insurance policy is void if it insures against liability for criminal actions); *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 405, 507

P.2d 189 (1973) (impermissible to charge bonding company with penalty imposed for embezzlement or conversion). These cases deal with criminal penalties and are not applicable to the present case.

The federal courts have consistently held penalties imposed under various Internal Revenue Code sections are not criminal penalties. Rather, they are civil penalties imposed as a means of insuring that the taxes owed the government are paid and paid promptly. They are merely collection devices. *United States v. Boyle*, 469 U.S. at 245 (penalty imposed under § 6651[a][1] for negligent late filing intended to insure timely filing of tax returns); *Swift v. Levesque*, 614 F. Supp. at 177 (§ 6672 is a civil penalty, not a criminal punishment, designed to insure payment of all tax due and owing). There is no indication in the statute that § 6653(a) is any different or that the federal courts would construe it differently. Peat Marwick cites to no cases stating there are sound policy reasons against allowing a right of indemnity to someone who negligently relies on the advice of a professional in preparing tax returns. An award of damages for civil penalties imposed under § 6653(a) does not contravene public policy.

Finally, Peat Marwick contends its negligent act was not the proximate cause of Bick's injury. The proximate cause of an injury is that cause which in a continuous, natural sequence, unbroken by an efficient intervening cause, produces the injury as a natural and probable consequence of the wrongful act. *Hammig v. Ford*, 246 Kan. at 73. Whether an intervening act of negligence is sufficient to insulate the original tortfeasor from liability depends on the foreseeability of the intervening act. If the intervening act is reasonably foreseeable, the original tortfeasor is not absolved and his negligent act is a proximate cause of the injury. *Schmeck v. City of Shawnee*, 232 Kan. 11, 28, 651 P.2d 585 (1982). Whether the negligent act is the proximate cause of the injury is normally a question of fact for the jury. *Hammig v. Ford*, 246 Kan. at 74.

At trial, two certified public accountants testified that an accountant cannot depend upon a taxpayer to review the tax returns. Both testified the majority of taxpayers merely look at the bottom line showing the amount due or owing and sign the returns. This evidence supports the legal conclusion that Bick's act of negli-

gence was reasonably foreseeable and does not act to insulate Peat Marwick from its proportionate responsibility for the loss.

### 3. Evidence of Prior Conviction

Defendant contends the trial court committed reversible error in prohibiting evidence of Bick's prior conviction of aiding and abetting the violation of 18 U.S.C. § 1860 (1984) for impeachment purposes. K.S.A. 60-421 provides that evidence of prior convictions used for impeachment purposes is inadmissible unless the prior crime involves dishonesty or false statement. The crime involved here is a violation of 18 U.S.C. § 1860, which states:

"Whoever bargains, contracts, or agrees, or attempts to bargain, contract, or agree with another that such other shall not bid upon or purchase any parcel of lands of the United States offered at public sale; or

"Whoever, by intimidation, combination, or unfair management, hinders, prevents, or attempts to hinder or prevent, any person from bidding upon or purchasing any tract of land so offered for sale —

"Shall be fined not more than $1,000 or imprisoned not more than one year, or both."

Bick pleaded guilty to the following information:

"In April, 1979, in the State and District of Colorado, Koch Industries, by combination with others, did prevent and attempt to hinder and prevent other persons from purchasing a parcel of land of the United States offered at public sale, to wit: Wyoming Parcel No. W-68066, RICHARD BICK, ROBERT WALTON and JIM WHISNAND did aid and abet Koch Industries in preventing other persons from purchasing parcel No. W-68066; all in violation of Title 18, United States Code, Sections 1860 and 2."

In ruling on the admissibility of the conviction, the trial court stated the statute was designed to "prevent fraud upon the United States, in that it prevents persons from combining to evade a fair auction by the United States of parcels for oil and gas exploration." The trial court went on to say that type of activity is not always fraud, but may be an antitrust violation not amounting to fraud. In ruling the evidence was inadmissible, the trial court noted the word "fraud" was not used in the information or the judgment.

The phrase "dishonesty or false statement" means crimes such as perjury, criminal fraud, embezzlement, forgery, or any other offense involving some element of deceit, untruthfulness, or lack of integrity in principle. The issue in determining the admissibility of prior convictions is whether dishonesty is an inherent element

of the offense. For example, larceny is considered a crime involving dishonesty because the crime itself shows a lack of integrity. *Tucker v. Lower*, 200 Kan. 1, 5, 434 P.2d 320 (1967). Crimes of physical violence, drunkenness, reckless driving, vehicular homicide, and narcotic offenses are generally excluded as these crimes normally are not associated with dishonesty or false pretenses. See *Fudge v. City of Kansas City*, 239 Kan. 369, 375-76, 720 P.2d 1093 (1986); *Tucker*, 200 Kan. at 5. Conspiring and aiding and abetting such a conspiracy to prevent others from participating in a public auction of parcels of land is dishonest and inherently includes an element of fraud. It is irrelevant that the statute defining the crime does not employ the term "fraud." It is also irrelevant that the statute is designed to prevent fraud upon the government rather than upon an individual. Convictions of violation of 18 U.S.C. § 1860 are admissible to impeach the credibility of a witness.

The next issue is whether the error affirmatively appears to have prejudicially affected Peat Marwick's substantial rights (K.S.A. 60-2105). Harmless errors, not prejudicing the substantial rights of the complaining party, must be disregarded on appeal. *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, 701, 715 P.2d 2 (1986). Further, Peat Marwick has the burden of proving the trial court's erroneous exclusion of Bick's prior conviction resulted in prejudice to its substantial rights. See *Walters v. Hitchcock*, 237 Kan. 31, 35, 697 P.2d 847 (1985). On appeal, Peat Marwick merely contends the exclusion was incorrect as a matter of law and requires reversal per se. We disagree. Kansas case law is replete with decisions placing the burden of proof on the complaining party. Peat Marwick does not indicate what possible effect the admission of the prior conviction would have had on the outcome of the trial.

The record itself does not show Peat Marwick was prejudiced. This is a civil action for damages for professional negligence. Peat Marwick's basic defense was it relied on Bick to review the tax returns. Bick, on the other hand, testified he relied on Peat Marwick's professional expertise. The central issue, therefore, was whether either party could reasonably rely on the other and what proportionate share of the responsibility each party bore for the loss. The sole purpose of introducing evidence of Bick's prior

conviction was to impeach his credibility as a witness. Bick's credibility is irrelevant to the issue of Peat Marwick's expectations of reliance on him and the reasonableness of that reliance. The trial court did not restrict cross-examination of Bick regarding his knowledge of the tax code or his failure to review the tax returns. He admitted he did his own tax returns prior to 1981, understood the term "capital gains," knew a stock sale was a capital gain which must be reported, and did not even make a cursory review of the tax returns. Exclusion of evidence of Bick's prior conviction did not affect the fairness of the trial and did not prejudice Peat Marwick's substantial rights to a fair trial. The error was therefore harmless.

Affirmed.