(138 P.3d 380)

No. 94,379

JOSEPH K. MOSS, *Appellant,* v. JAMES T. MAMALIS, *et al.,*
*Appellees.*

152

Opinion filed July 14, 2006.

*Christopher M. McHugh* and *Bach T. Hang*, of Joseph & Hollander, P.A., of Wichita, for appellant.

*Melissa E. Kasprzyk, Thomas E. Wright*, and *Allison M. Kenkel*, of Wright, Henson, Clark, Hutton, Mudrick & Gragson, LLP, of Topeka, for appellee James T. Mamalis.

*Julie St. Peter*, of Kansas Department of Corrections, for appellees Tiffany Jones and State of Kansas.

Before RULON, C.J., ELLIOTT, J., and KNUDSON, S.J.

RULON, C.J.: Plaintiff Joseph K. Moss appeals the district court's awards of summary judgment in favor of defendants James T. Mamalis, Tiffany Jones, and the State of Kansas. Plaintiff argues the district court erroneously found the statute of limitations barred plaintiff's legal malpractice claim against Mamalis and erroneously found tort liability did not extend to Tiffany Jones and the State of Kansas on the negligence and civil rights claims presented. We affirm in part, reverse in part, and remand for further proceedings.

On January 17, 2001, the district court revoked the plaintiff's probation in two separate cases for a violation which did not involve the commission of a new offense. The journal entry for each revocation imposed a postrelease supervision term of 24 months. However, after receipt of a letter by the Department of Corrections (DOC) indicating the imposition of a postrelease supervision term was error, the district court entered *nunc pro tunc* orders for both journal entries, amending them to read: "No post-release supervision period to be served per K.S.A. 22-3716(e)." Neither the plaintiff nor the DOC received notice of these *nunc pro tunc* orders.

Consequently, upon plaintiff's release from prison, he was required to serve nearly all of a 24-month postrelease supervision term. On September 16, 2003, the plaintiff sued defendant Mamalis for legal malpractice and for violations of his civil liberties and sued defendants Jones and the DOC for negligence and for violations of his civil liberties. The State of Kansas was eventually substituted for the DOC as a party in the suit.

Ultimately, the district court granted defendant Mamalis' motion for summary judgment, finding the statute of limitations barred plaintiff's claim for malpractice. The district court further found Mamalis was not a state actor subject to suit under 42 U.S.C. § 1983 (2000). The district court eventually granted the summary judgment motion filed by defendants Jones and the State of Kansas. The district court further found the plaintiff had abandoned

any claim against the State of Kansas, except under a theory of respondeat superior. The court found Jones owed no duty to the plaintiff which would form the basis for a negligence suit and further held defendants Jones and the State of Kansas were protected by the discretionary function exception of the Kansas Tort Claims Act (KTCA), K.S.A. 75-6104(e).

## Statute of Limitations

As noted above, the district court granted summary judgment to Mamalis on both the malpractice claim and the claim brought pursuant to 42 U.S.C. § 1983. On appeal, the plaintiff does not challenge the district court's judgment disposing of the Section 1983 claim against Mamalis. Consequently, such claim is deemed abandoned. See *Roy v. Young*, 278 Kan. 244, 248, 93 P.3d 712 (2004). The plaintiff does, however, contend the district court erred in granting summary judgment to Mamalis on the legal malpractice claim.

Ordinarily, summary judgment is only proper when the available pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate the absence of a genuine issue of material fact, so that the moving party is entitled to judgment as a matter of law. Appellate review is identical to the district court's review of such a motion to the extent that all facts and reasonable inferences must be interpreted in favor of the party against whom summary judgment is sought. See *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005). However, when the parties do not dispute the pertinent facts upon which the summary judgment ruling was based, appellate review is unlimited. See *Roy*, 278 Kan. at 247.

The district court found the plaintiff's malpractice claim against Mamalis was barred by the 2-year statute of limitations in K.S.A. 60-513(a)(4) because the plaintiff's cause of action for malpractice accrued on January 17, 2001, when the probation revocation journal entries were filed. The court reasoned the injury suffered by the plaintiff was the improper imposition of postrelease supervision at the time probation was revoked and the plaintiff knew or should

have known of the injury at the time the court's decision was rendered.

Although legal malpractice may arise in tort or in contract law, there is no specific or implied provision of contract which the plaintiff contends was violated in this case. Rather, the plaintiff has claimed his attorney breached a duty of reasonable diligence or competence in legal representation, a duty imposed by law. Consequently, the district court properly found the plaintiff's action against Mamalis sounded in tort, which is governed by the 2-year limitations period of K.S.A. 60-513(a)(4). See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 110, 114-15, 936 P.2d 714 (1997) (holding that a legal malpractice action was properly characterized as tort where attorney's duty was inherent in the attorney/client relationship rather than specifically imposed within the contract provisions).

Nevertheless, the determination of the accrual date for a cause of action in tort is governed by K.S.A. 60-513.

"(b) Except as provided in subsection (c) and (d), the cause of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. 60-513(b).

The term "substantial injury" means an injury for which a legal action lies. See *Roof-Techs Int'l, Inc. v. State*, 30 Kan. App. 2d 1184, 1193, 57 P.3d 538 (2002), *rev. denied* 275 Kan. 965 (2003) (citing *Roe v. Diefendorf*, 236 Kan. 218, 222-23, 689 P.2d 855 [1984]). It is knowledge of the fact of an actionable injury, not the extent, which triggers the statute of limitations. See *Roof-Techs Int'l*, 30 Kan. App. 2d at 1194 (citing *Bryson v. Wichita State University*, 19 Kan. App. 2d 1104, 1108, 880 P.2d 800, *rev. denied* 256 Kan. 994 [1994]).

Depending upon the facts and circumstances of each case, one of four legal theories may apply to a determination of the accrual date for a legal malpractice action: (1) the occurrence rule; (2) the

damage rule; (3) the discovery rule; and (4) the continuous representation rule. See *Pancake House, Inc. v. Richmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986).

Under the occurrence theory, the statute of limitations begins to run from the date the negligent act was committed. *Pancake House*, 239 Kan. at 87. We understand the district court adopted this theory in finding that the statute of limitations for the malpractice action began to run on January 17, 2001, the date of the probation revocation. We disagree.

The plaintiff challenges the application of the occurrence rule in this case, citing *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 806 P.2d 997 (1991). In *Dearborn Animal Clinic*, an attorney drafted an asset purchase agreement, which was to provide a requirement the purchaser buy stock in a third party. The purchase agreement actually provided only an option to purchase the stock, in opposition to the intent of the sellers, and the sellers ultimately sued their attorney for malpractice. The attorney raised the statute of limitations as a defense. Even though our Supreme Court noted the negligent act occurred when the purchase agreement was improperly drafted, the court concluded the statute of limitations did not bar the seller's suit against their attorney because the cause of action did not accrue until the client had suffered injury and had reasonable knowledge of the injury. 248 Kan. at 265.

Based on *Dearborn Animal Clinic*, the plaintiff contends his malpractice action against defendant Mamalis did not accrue until September 21, 2001, when plaintiff was released from prison and began serving the illegal postrelease supervision period because, until that time, Mamalis' negligence had not caused plaintiff actionable injury. We agree. Before a cause of action in tort may accrue, the plaintiff must have suffered a legally cognizable deprivation proximately caused by the breach of a duty by another. See *Holt v. Wesley Med. Center*, 277 Kan. 536, 541, 86 P.3d 1012 (2004).

Defendant Mamalis attempts to distinguish the negligent legal representation in a civil matter characterized by *Dearborn Animal Clinic* from the negligent legal representation in a criminal matter as in the present case. This argument is less than compelling. Al-

though Mamalis correctly asserts the imposition of a postrelease supervision term violated K.S.A. 2005 Supp. 22-3716(e) at its inception, this fact is indistinguishable from the negligent drafting of the purchase agreement in *Dearborn Animal Clinic*, which also erroneously imposed a legal obligation upon the client from its inception.

Under the damage theory, a cause of action does not accrue until the negligent representation has caused a legally cognizable injury to the client. *Pancake House*, 239 Kan. at 87. Here, the plaintiff suffered no injury because of the wrongful imposition of postrelease supervision until he was released from prison and placed on postrelease supervision. Stated another way, if the postrelease supervision requirement had been eliminated before the plaintiff completed his prison term, any negligence by Mamalis with respect to the original imposition of postrelease supervision would have caused the plaintiff no injury.

Defendant Mamalis further argues the plaintiff possessed actual or constructive knowledge, at the revocation hearing or shortly thereafter, that the imposition of a postrelease supervision term was error. Mamalis argues knowledge of a negligent act giving rise to an injury constitutes accrual of the cause of action; thus, the district court properly dated the 2-year statute of limitations from the probation revocation hearing. For authority, Mamalis cites *Bagby v. Merrill Lynch, Pierce, Fenner & Smith*, 104 F. Supp. 2d 1294, 1302 (D. Kan. 2000); *Knight v. Myers*, 12 Kan. App. 2d 469, 474, 748 P.2d 896 (1998).

In *Bagby* and *Knight*, however, the plaintiffs had suffered legally cognizable injuries but did not immediately attribute the injuries to the negligence of the defendants. The present case offers the opposite situation; the plaintiff arguably had sufficient information demonstrating his attorney's negligent conduct but had suffered no injury supporting a cause of action for malpractice.

As the *Knight* court noted, "As a general rule, a cause of action accrues as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which plaintiff could first have filed and prosecuted an action to a successful conclusion." 12 Kan. App. 2d at 474 (citing *Pancake*

*House*, 239 Kan. at 87). As previously discussed, a tort action does not accrue until the plaintiff has suffered a legally cognizable injury. See *Holt*, 277 Kan. at 541. Until the plaintiff was released from prison and began serving a postrelease supervision term, the injury caused by the improper imposition of a postrelease supervision period was merely theoretical.

Our ruling that the statute of limitations did not begin to run in this case until the plaintiff was improperly required to serve a post-release supervision term does not relieve the plaintiff's failure to investigate the propriety of the postrelease supervision require-ment once he possessed reasonable knowledge that the require-ment was imposed in error. Defendant Mamalis is entitled to pres-ent to the finder of fact any fault on the part of the plaintiff to protect his own liberty interest in a trial alleging Mamalis was neg-ligent. See *Maunz v. Perales*, 276 Kan. 313, 76 P.3d 1027 (2003) (holding, in the context of a medical malpractice suit, that the fault of a mentally ill patient may be compared with the fault of the alleged negligence of the mental health provider). Nevertheless, the comparative fault of the various parties is a question of fact not appropriate for summary judgment. See *Honeycutt v. City of Wichita*, 247 Kan. 250, 251, 796 P.2d 549 (1990) (ruling that com-parative fault is generally a fact question for the jury).

Because a cause of action for legal malpractice did not accrue until the plaintiff was injured by being erroneously assigned to serve a postrelease supervision term, the 2-year statute of limita-tions did not run until September 21, 2003. The district court im-providently granted Mamalis' motion for summary judgment on the basis of a statute of limitations bar.

## Lack of Legal Duty

The plaintiff further contends the district court erroneously granted the motion for summary judgment on the negligence claim filed by defendants Jones and the State of Kansas. Primarily, the district court ruled that Jones owed no specific duty towards the plaintiff which would support a claim of negligence. Whether a legal duty exists in a given situation is a question of law, subject to

a summary judgment ruling. See *Roe v. Department of SRS*, 278 Kan. 584, 592, 102 P.3d 396 (2004).

As noted by the district court, a parole officer, acting within the scope of his or her employment, is specifically included within the statutory definition of a law enforcement officer. See K.S.A. 22-2202(13). A law enforcement officer's duty is to the general public, not to any specific individual, unless a party is able to demonstrate a special relationship creating specific duties toward the individual by the officer. See *Mills v. City of Overland Park*, 251 Kan. 434, 446, 837 P.2d 370 (1992).

A parole officer's duties are statutorily prescribed in K.S.A. 75-5216. Nothing in this statute creates a special relationship between the parole officer and the plaintiff which would require the parole officer to investigate the plaintiff's claims of an erroneous imposition of postrelease supervision. In Kansas, the court, not the DOC, imposes the applicable term of postrelease supervision, and a parole officer possesses no discretion in setting a term of postrelease supervision. See K.S.A. 2005 Supp. 22-3717(d)(1)(D); *Safarik v. Bruce*, 20 Kan. App. 2d 61, 66-67, 883 P.2d 1211, *rev. denied* 256 Kan. 996 (1994) (in postconviction setting, sentencing court has authority over challenges to convictions and penalties assigned; DOC has authority over execution of the sentence imposed and the conditions of confinement).

In finding the parole officer defendant Jones owed the plaintiff no independent duty to investigate the validity of the order for postrelease supervision, the district court relied on *Fox v. Custis*, 236 Va. 69, 75, 372 S.E.2d 373 (1988). Though *Fox* provides weak persuasive authority for the State's position, the plaintiff offers no competing authority more directly on point. However, the Florida Court of Appeals has addressed a similar issue. See *Andrews v. Florida Parole Com'n*, 768 So. 2d 1257 (Fla. Dist. App. 2000).

In *Andrews*, the Florida Department of Corrections had unlawfully arrested and incarcerated Andrews for violations committed during his conditional release. Thereafter, Andrews demonstrated that, pursuant to state law, he should not have been on continued conditional release when the violations occurred. He was released from the custody of the Florida Department of Corrections. An-

drews then sued, in part, for negligent discharge of official duties and false imprisonment.

On the negligence claim, the Florida Court of Appeals reasoned:

"It is clear to us that the statutes invoked, specifically, sections 944.275 and 947.1405, are simply a part of an overall statutory scheme whose sole purpose is the protection of the public through a system of apprehension, conviction and incarceration of criminal offenders. These statutory provisions, and other related provisions, create no duty on the part of the Commission of DOC for the benefit of any private person, and thus afford no basis for an action by any aggrieved individual for alleged negligence or errors in the application or enforcement. See *Vann v. Department of Corrections*, 662 So. 2d 339, 340 (Fla. 1995) ('A governmental duty to protect its citizens is a general duty to the public as a whole, and where there is only a general duty to protect the public, there is no duty of care to an individual citizen which may result in liability.') (quoting *Everton v. Willard*, 468 So. 2d 936 [Fla. 1985])." *Andrews*, 768 So.2d at 1260-61.

The *Andrews* court further noted the Florida Department of Corrections operated under facially valid warrants for the violations of conditional release.

"With regard to DOC, even if the warrants upon which Andrews had been arrested were issued improperly by the Commission based upon a mistake as to the facts or the law, the trial court correctly dismissed the false imprisonment claim against DOC, because DOC was entitled to accept the warrants as lawful, as they were regular on their face and issued by a legal body having authority to issue warrants. [Citation omitted.]" 768 So. 2d at 1263.

While *Andrews* is distinguishable on particulars, its reasoning is persuasive, particularly because Florida law with respect to defining the duty of law enforcement officers is similar to Kansas law. The plaintiff, here, seeks to create a special duty between the parole officer and himself out of the parole officer's general duty to the State of Kansas to supervise individuals on parole or postrelease supervision as articulated in K.S.A. 75-5216. We do not believe the Kansas Legislature intended to create such a special relationship when promulgating K.S.A. 75-5216.

Moreover, borrowing from the reasoning of *Andrews*, a parole officer relying upon the facially valid paperwork from the DOC has no duty to a person on postrelease supervision to investigate a claim such sentence imposed was invalid. To adopt the plaintiff's argument would effectively transform every parole officer into an ad-

vocate for every person placed on parole, postrelease supervision, or conditional release. A parole officer's duty does not extend to investigating the plaintiff's legal claims.

Consequently, the district court properly found the plaintiff's negligence claim failed for a lack of duty and properly awarded summary judgment to defendant Jones and to the State of Kansas, which was vicariously liable for any of Jones' negligent acts.

## Section 1983 Claim

The plaintiff further argues the district court improperly granted summary judgment to defendants Jones and the State of Kansas on plaintiff's civil rights claim.

42 U.S.C. § 1983 (2000) provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The plaintiff contends he possesses a valid claim under § 1983 because defendant Jones, operating under the color of law, illegally restricted his constitutional right to liberty. As support for the propriety of his § 1983 claim, the plaintiff cites *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), *cert. denied* 478 U.S. 1020 (1986), and *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).

Both cases are distinguishable from the present case as both involved a miscalculation of prison terms by prison officials, an act which lay solely within the discretion of these officials. In contrast, postrelease supervision in Kansas is imposed by the sentencing court, and the administration of a postrelease supervision period by the DOC is purely ministerial, not discretionary. See *Beck v. Kansas Adult Authority*, 241 Kan. 13, 30-31, 735 P.2d 222 (1987) (courts examine the totality of the circumstances in deciding whether conduct is discretionary).

Consequently, the plaintiff's allegations, taken in the most favorable light, do not support a conclusion that defendant Jones' conduct violated any constitutional right of the plaintiff. Further-

more, even if Jones owed some obligation to investigate the plaintiff's allegations that plaintiff was improperly placed on postrelease supervision, there is no statute or case law which clearly establishes this duty. As a result, Jones is entitled to qualified immunity. See *McCormick v. Board of Shawnee County Comm'rs*, 272 Kan. 627, 642, 35 P.3d 815 (2001), *cert. denied* 537 U.S. 841 (2002) (applying the two-part test for qualified immunity taken from *Saucier v. Katz*, 533 U.S. 194, 201-02, 150 L. Ed. 2d 272, 121 S. Ct. 2151 [2001]).

As the plaintiff sued the State of Kansas under only a theory of respondeat superior, the district court properly granted summary judgment in favor of the State of Kansas as well. See *Jacobson v. Parrill*, 186 Kan. 467, 473-74, 351 P.2d 194 (1960) (discussing the effect of a release of tortfeasor from liability upon liability imputed through respondeat superior).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.