No. 54,885

HAYSVILLE U.S.D. No. 261, *Plaintiff*, v. GAF CORPORATION, *Appellant*, v. CARMICHAEL-WHEATCROFT & ASSOCIATES, P.A.; BUCKLEY ROOFING CO., INC.; and W. R. GRACE & CO., *Third-Party Defendants-Appellees*.

(666 P.2d 192)

 Opinion filed
June 10, 1983.

*Jerry D. Bogle,* of Gott, Young & Bogle, P.A., of Wichita, argued the cause and was on the briefs for the appellant.

*Jeff A. Roth,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and *H. E. Jones,* of the same firm, was with him on the brief for Carmichael-Wheatcroft & Associates, P.A., appellee.

*James D. Oliver,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Jerry G. Elliott* and *Susan L. Smith,* of the same firm, were with him on the brief for W. R. Grace & Co., appellee.

*Alan L. Rupe,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the brief for Buckley Roofing Co., Inc., appellee.

The opinion of the court was delivered by

LOCKETT, J.: Early in 1974 Haysville School District No. 261 discovered that two elementary school buildings needed reroofing. Carmichael-Wheatcroft & Associates, P.A. (architects) were retained by the school district to determine the extent of repairs required in the repair of the two school building roofs. The architects prepared the specifications which included use of products manufactured by W. R. Grace & Company and GAF Corporation. The architects requested bids from contractors, requiring the bids to be submitted by June 19, 1974, at 2:00 p.m. July 8, 1974, the contracts for reroofing were entered into between the school district and Buckley Roofing Company, Inc. (roofing contractor).

December 3, 1974, just prior to completion of the reroofing, the school district and GAF entered into two "Inspection and Service Guarantees." December 6, 1974, the roofing contractor completed work on the roof except for a few repair items that required warm weather, which were completed in April, 1975.

After installation of the new roofs, cracks appeared in both of the elementary school building roofs. The school district alleged that the cracks were caused by inadequate and defective materials provided by GAF. The school district contacted GAF and requested repairs to both of the leaking roofs. GAF denied liability under the contract with the school district. The school district incurred substantial repair bills and suffered interior damage to the school buildings which it alleged was caused by

water penetrating the outer roof membrane. The school district sued GAF in May, 1980, on several fault-based theories, including breach of warranties under the Uniform Commercial Code, negligence and fraud. In addition, the school district alleged breach of the inspection and service guarantees between it and GAF. The school district made no claim against GAF or any other individual involved in the repair of the roof for faulty installation.

GAF joined as third-party defendants (K.S.A. 60-214) the architects, the roofing contractor and the manufacturer of the lightweight concrete insulating material on which the roofs were placed, W. R. Grace & Company (Grace). GAF alleged the third-party defendants primarily were responsible for the damages and GAF was entitled to indemnity for any judgment the plaintiff school district might obtain.

The inspection and service guarantees were produced during discovery. The guarantee contracts between the school district and GAF allegedly were entered into after GAF oversaw and inspected insulation of the roofing membranes of the two schools. The contracts between GAF and the school district are reproduced as follows:

**G A F Corporation** No. __KRS-236__

## INSPECTION AND SERVICE GUARANTEE

Unified School District #261, 1745 Grand Avenue, Haysville, Kansas
OWNER

One Story Brick
TYPE OF BUILDING

Rex Elementary School, 1100 Grand Avenue, Haysville, Kansas
ADDRESS OF BUILDING

Asbestos Smooth Surface Built-Up Roof No. 6
TYPE OF ROOF TYPE OF FLASHING

 520
AREA OF ROOF NO. OF SQUARES

Buckley Roofing Company, 3601 North Hydraulic, Wichita, Kansas 67219
APPLIED BY DATE OF COMPLETION

 November 27, 1974

### THE GUARANTEE

GAF guarantees the GAF roofing membrane and base flashing used in the construction of the above described roof for a period of ten (10) years commencing with the date of Completion. This Guarantee shall cover such repairs to the GAF roofing membrane and base flashing as shall be necessary solely in order to correct leaks resulting from any of the causes enumerated below. Such repairs will be made at no cost to the Owner, provided that the Owner gives GAF written notice of any such leaks to GAF's nearest district office no later than thirty (30) days after the Owner's discovery of such leak.

1. Natural deterioration of GAF roof membrane or GAF base flashing
2. Blisters
3. Bare Spots
4. Fish-mouths
5. Ridges
6. Splits not caused by structural failure

7. Buckles and wrinkles
8. Thermal shock
9. Gravel stop breaks (except repair of metal)
10. Plastic pans
11. Workmanship in applying roofing membrane or base flashing
12. Slippage of roofing membrane or base flashing

### EXCLUSIONS FROM GUARANTEE

The foregoing Guarantee shall *not* cover the following conditions or any damages which may arise therefrom.

1. Roof maintenance for correction of conditions other than leaks.
2. Natural disasters such as windstorms, hail, floods, hurricanes, lightning, tornados, and earthquakes.
3. Structural defects or failures.
4. Damage to building or contents.

5. Changes in usage of building unless approved in writing in advance by GAF.
6. Damage resulting from any new installations on or through the roofing membrane.
7. Any repairs or other applications to the roof membrane or base flashing after date of completion, unless performed in a manner acceptable to and approved by GAF in writing.

No representative, employee, agent of GAF, or any other person has any authority to assume for GAF any additional or other liability or responsibility in connection with the roof described above. GAF shall not be responsible for or liable for any change and/or amendment to the GAF Built-Up Roof Specifications in regard to the construction of the roof described above, unless said change and/or amendment to the Specifications are approved in writing by an authorized GAF District Sales Manager.

THIS GUARANTEE IS EXPRESSLY IN LIEU OF ANY OTHER GUARANTEES AND/OR WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATIONS OF LIABILITY ON THE PART OF GAF CORPORATION. IN NO EVENT SHALL GAF BE LIABLE FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY KIND.

*NOTE:* This Guarantee becomes effective only when bills for installation, supplies and the inspection fee have been paid in full to the roofing contractor and material suppliers.

*NOTE:* This guarantee does not include any liability for products used in the construction of the roof or flashing not manufactured or supplied by GAF.

See reverse side for options available to owner.

G A F Corporation

By _____ Date 12/3/74
 Authorized Signature

71

Both inspection and Service Guarantees are identical and only one is reproduced.

After the two inspection and repair contracts were produced during discovery, the third-party defendants filed their motions

for summary judgment on GAF's third-party claims for indemnity based upon the inspection and service guarantees. GAF admitted it had no legal theory for recovery of damages from the third-party defendants except as may arise by reason of its inspection and service guarantees between GAF and the school district.

The district court granted the motions for summary judgment and found that the inspection and service guarantees created neither a legal relationship between GAF and the third-party defendants nor an implied cause of action against them. The district court found as follows:

"A. No legal relationship exists between the defendant GAF Corporation and the third-party defendants by reason of the inspection and service contract between GAF corporation and the plaintiff Haysville Unified School District No. 261; the Court further finds that GAF Corporation as third-party plaintiff has no implied cause of action against any other third-party defendants.

"B. The court finds that any liability GAF might have to the plaintiff under the inspection and service contract between GAF Corporation and the plaintiff is not for conduct claimed to have been done by any of the third-party defendants."

GAF moved the court to reconsider the dismissal of its third-party claims for indemnity based on the guarantee agreements. The court denied the motion and permission was granted to take this interlocutory appeal. On September 9, 1982, the Court of Appeals granted the defendant GAF's application for permission to take an interlocutory appeal pursuant to K.S.A. 60-2101(*b*). Further proceedings in the appeal were stayed until the decision of the Kansas Supreme Court on rehearing in *Ellis v. Union Pacific R. R. Co.*, 231 Kan. 182, 643 P.2d 158, *aff'd* 232 Kan. 194, 653 P.2d 816 (1982). On October 6, 1982, the case was transferred from the Court of Appeals to the Kansas Supreme Court.

In the original specifications for reroofing, the architects included a requirement that the roofing contractor provide a 10-year inspection and service guarantee program (with a 10-year renewable option) equal to the GAF Sentinel System. GAF has not alleged that the inspection and service guarantees signed December 3, 1974, between the school district and GAF were the agreements required to be included in the roofing contractor's bid. The third-party defendants allege, and GAF has not denied, that the guarantee agreements entered into December 3, 1974, were separate agreements between the school district and GAF.

The school district sued GAF under two types of theories: (1)

fault-based theories (tort), and (2) a breach of inspection and service guarantees between the school district and GAF (contract). The school district made no claim against GAF or any other party for faulty installation.

Under the fault theory, the school district originally sued GAF. GAF answered the school district's petition and was allowed to join as defendants the architect, the roofing contractor and Grace pursuant to K.S.A. 60-258a(c), which states:

"On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury or property damage, any other person whose causal negligence is claimed to have contributed to such death, personal injury or property damage shall be joined as an additional party to the action."

The school district did not amend its petition to include a claim against the added defendants on the fault theory as allowed by K.S.A. 60-220(a), which states in part:

"A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

The school district allowed the statute of limitation on the fault theory (tort) against the third-party defendants to expire. The school district therefore has no claim against the architect, roofing contractor and Grace under the fault theory (tort). By suing one defendant, the plaintiff knows under a fault-based theory that he will recover only the percentage of damages for which GAF is responsible. After GAF's joinder of the architect, roofing contractor and Grace for purposes of comparison of fault, the plaintiff in this action was aware of the identity of the joined parties, the allegations of negligence attributed to each, and how such allegations, if proven, could affect the recovery from the original defendant at trial. The school district determined to proceed to trial against only GAF. The school district did not attempt to amend the petition to include claims against the third-party defendants before or after the running of the statute of limitation.

The trial court correctly determined that the school district had stated no fault-based claim (tort) against the architect, roofing contractor or Grace, and dismissed them as defendants. The trial court further ruled GAF would only be responsible for its proportionate share of damages under the school district's fault claim (tort) (as stated in *Ellis v. Union Pacific R. R. Co.*, 231 Kan.

182). Neither the school district nor GAF appealed that ruling by the court.

The school district's second theory of recovery contained in its petition was for a breach of the inspection and service guarantees (contract) entered into between the school district and GAF. GAF joined the architect, roofing contractor and Grace as third-party defendants. K.S.A. 60-214(*a*) states:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action. The person served with the summons and the third-party complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in K.S.A. 60-212 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in K.S.A. 60-213. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in K.S.A. 60-212 and his counterclaims and cross-claims as provided in K.S.A. 60-213. Any party may move to strike the third-party claim, or for its severance or separate trial. A third-party defendant may proceed under this section against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant."

After the production of the GAF inspection and service guarantee agreements, the third-party defendants filed motions for summary judgment. GAF admitted its only theory of recovery against the third-party defendants for damages was indemnity arising by reason of the service and guarantee agreements between GAF and the school district. The court found the relationship between GAF and the school district was contractual and the third-party defendants were not parties to the contracts between GAF and the school district. The court determined that implied comparative indemnity is not applicable in a contract action.

The Kansas comparative negligence statute, K.S.A. 60-258a, allows a party in a civil action to recover damages for negligence which results in death, personal injury or property damages. The award of damages is diminished in proportion to the amount of

negligence attributed to such party. The comparative negligence concept comes as a result of a desire to soften the harsh "all or nothing" rule of common law contributory negligence.

The concept of joint and several liability between joint tort-feasors which previously existed in this state no longer applies in comparative negligence actions. The individual liability of each defendant for payment of damages is to be based on proportionate fault, and contribution among joint judgment debtors is no longer needed in such cases because separate individual judgments are to be rendered. *Kennedy v. City of Saywer*, 228 Kan. 439, Syl. ¶ 3, 618 P.2d 788 (1980). We compare negligence under three theories: (1) common law negligence, (2) strict liability, and (3) implied warranty. Those actions brought under implied warranty are more akin to an action in tort than one in contract. 228 Kan. at 451. The statutory adoption of comparative negligence in Kansas has had the effect of abrogating the concept of indemnification based on the dichotomy of active/passive negligence. *Russell v. Community Hospital Association, Inc.*, 199 Kan. 251, Syl. ¶ 3, 428 P.2d 783 (1967). In actions where comparative negligence is an issue, the court deals in percentages of causal responsibility, and distinctions between primary, secondary, active and passive negligence lose their previous identities. The nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation, and the all or nothing concept is no longer valid. *Kennedy v. City of Sawyer*, 228 Kan. 439, Syl. ¶ 6.

There are two traditional situations in which claims of indemnity are allowed. The first occurs where there is an expressed contract of indemnity, such as a "hold harmless" agreement. The second occurs where a contract of indemnity may be implied when one is compelled to pay what another party ought to pay. The implied or constructive liability usually arises when one personally, without fault, is made to pay for a tortious act of another. The person paying has a right of action against the person at fault.

The question here is whether GAF's guarantee to the school district creates potential liability on behalf of the third-party defendants. GAF voluntarily contracted under specified conditions to pay for repairs to the roofs of the two schools. GAF does not claim the third-party defendants are parties to the contracts, or that the third-party defendants had agreed to be bound by the

contracts between GAF and the school district either before or after the contracts were negotiated. GAF predicates its third-party claim on a contract in which the third-party defendants are not parties. GAF is attempting to apply comparative negligence/implied comparative indemnity principles to breach of contract claims.

If contributory negligence or an analogous defense would not have been a defense to a claim, the comparative negligence statute does not apply. *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 845, 610 P.2d 1107 (1980). The school district claims GAF breached its inspection and service guarantee contracts to pay for repairs to the roofs, and damages resulting from leaks in the roof. The use of the comparative negligence theory is not proper in breach of contract actions. The school district's claim under the contracts was for pure economic relief sought for GAF's breach of those contracts.

In *Broce-O'Dell Concrete Products, Inc. v. Mel Jarvis Constr. Co.*, 6 Kan. App. 2d 757, 634 P.2d 1142 (1981), the Court of Appeals determined comparative negligence principles did not apply to breach of contract cases. Plaintiff, Broce-O'Dell, a supplier of concrete mix, sued defendant Mel Jarvis Construction for payment due for concrete supplied by plaintiff to defendant to construct concrete grain storage cylinders at an elevator. During construction, it was discovered that the concrete at the base of the cylinders was not properly setting. It was necessary to tear down the portion of the cylinders that had been completed and to rebuild. When Broce instituted an action for its unpaid concrete bill, Jarvis counterclaimed for the actual cost of tearing down and rebuilding the cylinders to the same level. Jarvis claimed that the concrete supplied by Broce was defective. The jury found for Jarvis.

Broce's first claim of error was the trial court's refusal to instruct the jury on comparative negligence under PIK Civ. 2d 20.01 and 20.02. The Court of Appeals reasoned:

"Our comparative negligence statute, K.S.A. 60-258a reads:

" '(a) The contributory negligence of any party in a civil action shall not bar such party or said party's legal representative from recovering damages for negligence resulting *in death, personal injury or property damage,* if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made . . . .' Emphasis added.

"The decisions construing our comparative negligence statute have a common thread running through them — all involved death, personal injury or property

damage. No case applies the statute to purely economic loss resulting from a breach of contract.

"Although Kansas interjects comparative negligence principles into areas which 'previously were considered beyond the ordinary tort negligence situation' (*Kennedy v. City of Sawyer*, 228 Kan. 439, 452, 618 P.2d 788 [1980]), the court in *Arredondo v. Duckwall Stores, Inc.*, 227 Kan. 842, 610 P.2d 1107 (1980), had qualified the application of the statute by stating:

" 'If contributory negligence or an analogous defense *would not* have been a defense to a claim, the comparative negligence statute does not apply; if contributory negligence *would* have been a defense, the statute is applicable.' 227 Kan. at 845. Emphasis in original.

"And see *Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan. App. 2d 308, 628 P.2d 239 (1981), *rev. denied* July 15, 1981. (Comparative negligence applies in nuisance case to the extent the nuisance is based on negligence, based on the availability of contributory negligence as a common law defense.)

"It is well settled that contributory negligence is no defense to a breach of contract. *Carter v. Hawaii Transportation Co.*, 201 F. Supp. 301 (D. Hawaii 1961); *Trinity Universal Insurance Co. v. Fuller*, 524 S.W.2d 335 (Tex. Civ. App. 1975); *Rotman v. Hirsch*, 199 N.W.2d 53 (Iowa 1972); 17A C.J.S., Contracts § 525 (1), p. 1018.

"Express warranties are contractual in nature, *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311, 521 P.2d 281 (1974); *Brunner v. Jensen*, 215 Kan. 416, 524 P.2d 1175 (1974). The manufacturer's neligence plays no role, *Cantrell v. R. D. Werner Co.*, 226 Kan. 681, 685, 602 P.2d 1326 (1979). All the plaintiff must show is a failure of performance *as warranted* — a specific defect need not be proved. *Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, Syl. ¶ 2, 571 P.2d 48 (1977). The court in *Huebert v. Federal Pacific Electric Co., Inc.*, 208 Kan. 720, 494 P.2d 1210 (1972) concluded in Syl. ¶ 2:

" 'Contributory negligence or assumption of risk as normally used are not defenses to an action based on breach of an express warranty; however, an unreasonable use of a product after discovery of a defect and becoming aware of a danger is a defense.' Emphasis added.

"As to implied warranty, *Kennedy v. City of Sawyer*, 228 Kan. at 439, expressly held 'the doctrine of comparative fault or comparative causation should be and is applicable to both strict liability claims and to those claims based on implied warranty in products liability cases.' Concededly the fact a products liability case is based on implied warranty does not prevent the application of comparative fault principles. This, however, is not a products liability case: There is no claim of injury to person or property from a dangerous product, but only of economic loss through the furnishing of a defective product. Unless a breach of warranty, either express or implied, causes death, personal injury or physical damage to property, the comparative negligence statute does not apply. If the result is simple economic loss, liability and damages are governed by breach of contract principles.

"Of course 'fault' does play some part in contract actions in that it may bear on the broader question of damages. One who breaches a contract is liable for damages *caused by the breach;* he is not liable for damages flowing from other causes whether or not those other causes have the connotations of culpability associated with the term 'fault.' In this case it may be said that it was Jarvis's

'fault' that 26 feet of good concrete were poured on top of six feet of bad concrete, even though the decision to pour may have been entirely reasonable. However, the fact that more than half Jarvis's loss may have been attributable to its own decision should not and does not mean it may not recover that portion of its loss caused by Broce's breach of contract. The instructions given and verdict reached attained that result and cannot be disturbed." 6 Kan. App. 2d at 759-61.

GAF entered into the inspection and service guarantees with the school district after GAF had inspected the nearly completed roofing of the two schools. The guarantee contracts covered the roofs for a period of ten years from date of completion. The guarantees covered repairs to the GAF roofing membranes and base flashing as necessary to correct leaks resulting from any of the causes set forth in the guarantee contracts, at no cost to the owner. The guarantees were contracts between two or more persons, founded upon consideration, by which GAF promised to answer to the school district for specific defects set forth in the contracts. GAF's guarantee contracts are related to the reroofing contract between the school district and the roofing contractor, and are a collateral undertaking between GAF and the school district. The formation of guarantee contracts, like any other contract, is governed by the principles of mutual assent, adequate consideration, definiteness, and a meeting of the minds. GAF does not deny the validity of the inspection and service guarantee contracts.

GAF is, in effect, attempting to apply comparative negligence and implied comparative indemnity, which are tort-based theories, to contract law. The difference between a tort and a contract action is that a breach of contract is a failure of performance of a duty arising under or imposed by agreement, whereas a tort is a violation of duty imposed by law. *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 79, 652 P.2d 665 (1982). Where there is a breach of a duty imposed by law (tort) one is allowed to join all wrongdoers, determine the wrongdoers' proportionate shares of the damages, and require each wrongdoer to pay his own proportionate share of the damages either to the injured party or under proper circumstances to allow a wrongdoer who has paid more than his proportionate share by settlement to the injured party, to recover back from the nonpaying wrongdoers, according to the nonpaying wrongdoers' percentages of fault.

GAF entered into guarantee contracts with the school district; the third-party defendants are not parties to those contracts. A

guarantee is a contract between two or more persons, founded upon consideration, by which one person promises to answer to another for the debt, default or miscarriage of a third person, and in a legal sense, has relation to some other contract or obligation with reference to which it is a collateral undertaking. *Timi v. Prescott State Bank*, 220 Kan. 377, Syl. ¶ 3, 553 P.2d 315 (1976). If GAF is forced to pay under the agreements it has the right of subrogation against those whose fault actually caused the damage to occur to the roofs in a separate action. GAF has a right to substitute itself in the place of the school district.

There are two kinds of subrogation: one which arises under a contract and one that has its origin and basis in equity, legal subrogation. Legal subrogation does not depend upon contract, assignment or privity. Legal subrogation allows one who has paid the debt of another to be substituted in the place of the original creditor.

To entitle a party to subrogation, he must pay the debt for which another is primarily responsible and such payment must generally be in full discharge of that party's obligation. Mere liability to pay is not ordinarily enough for one to be substituted to the rights of the creditor. In *Halpin v. Frankenberger*, 231 Kan. 344, 644 P.2d 452 (1982), Justice Holmes wrote:

" 'A surety, on paying the debt of the principal, is entitled to be subrogated to the rights of the creditor in all or any of the securities, means or remedies which the creditor has for enforcing payment against his principal. . . . The creditor is entitled to full payment of his debt before subrogation can be invoked.' p. 767.

"While the terms 'surety' and 'guarantor' are not synonymous, they are often used interchangeably and the contract of a surety and that of a guarantor are similar in many respects. 38 Am. Jur. 2d, Guaranty §§ 14-16. In both situations the party sought to be charged is liable for the debt of another. In most instances a surety is liable on the original instrument along with the principal debtor, while a guarantor ordinarily enters into a separate contract with the creditor whereby he guarantees payment or performance by the debtor. The principles surrounding the right of a surety or a guarantor to be subrogated to the rights of the creditor, however, are similar.

"Ordinarily the rights and obligations of a guarantor are established by the contract of guaranty. . . . It is also generally recognized that when a guarantor pays the principal's debt, the guarantor becomes subrogated to the rights of the creditor in seeking total reimbursement from the principal debtor . . . . Subrogation, as the term is defined, contemplates one person stepping into the shoes of another. As applied to a guarantor, it implies that the guarantor takes the place of, or inures to all of the rights of the creditor.

"73 Am. Jur. 2d, Subrogation § 30 states:

" 'The general rule is that a person is not entitled to be subrogated to the rights

or securities of a creditor until the claim of the creditor against the debtor has been paid in full, although the entire debt need not necessarily be paid by the party seeking subrogation. This rule finds its principal application in the case of sureties. Formerly, the right of subrogation was limited to transactions between principals and sureties, and doubtlessly the rule grew out of the inequitable result which would otherwise necessarily follow in this class of transactions. Until the debt is paid in full, there can be no interference with the creditor's rights or securities that might, even by a bare possibility, prejudice or in any way embarrass him in the collection of the residue of his debt. Obviously, it would be unjust to permit a surety or other person on payment of part of a debt to appropriate to himself the security the creditor holds for the satisfaction of the entire indebtedness. If a surety who has made a partial payment should be subrogated pro tanto, he would occupy a position of equality with the holder of the unpaid part of the debt, and if the property were insufficient to pay the remainder of the debt for which the surety is bound, the loss would fall proportionately on the creditor and the surety. . . .

. . . .

" 'The rule that the debt must be paid in full has in apparently every instance been invoked for the protection of the creditor, and never to defeat contract obligations in the interest of the debtor alone. Consequently, if the creditor consents to pro tanto subrogation, no one else is entitled to object. And even the creditor can object only to the extent that such subrogation would impair his preferred rights. The rule against allowing subrogation on the basis of part payment does not apply where the reason for it does not exist, as where there is no possibility that the creditor could be in any way prejudiced.' pp. 617-619.

"In 73 Am. Jur. 2d, Subrogation § 54, we find:

" 'The requirement that the entire debt be paid before a right of subrogation arises is, of course, applicable where subrogation is sought by a surety.' p. 632." 231 Kan. at 350-51.

To allow GAF to withhold payment alleged due under its guarantee contracts with the school district, until the percentage of fault of all possible wrongdoers is determined in an action, would defeat the very purpose of the guarantee agreements. Under GAF's theory, all parties that warrant, guarantee or insure under a contract would be entitled to withhold payments due under the contract until the rights and obligations of all parties, including those that are not contracting parties, are determined in one action. This theory eliminates the need for any type of warranty, guarantee or insurance agreement because the purchaser of the agreement has in reality only purchased a lawsuit.

The trial court was correct in granting summary judgment to the third-party defendants. GAF has no claim against the non-contracting parties until it pays or is required to pay the school district under the contracts.

The trial court's granting third-party defendants' motions for summary judgment is affirmed.