Mike R. RUSSELL, Plaintiff,

v.

Nancy Lee EVANS, Defendant,

and

American States Insurance Company, Respondent,

and

Fontastik, Inc., Appellant.

No. WD 51724.

Missouri Court of Appeals,
Western District.

April 16, 1996.

Andrew H. McCue, Kansas City, for appellant.

Mirko Bolanovich II, Kansas City, for defendant Evans.

David Mayer, Kansas City, for respondent.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

Having paid its insured, Mike Russell, $64,000 for damages in an automobile accident in which the other driver was underinsured, American States Insurance Company seeks to recover the money from the other driver's employer, Fontastik, Inc. Russell's car collided on April 10, 1991, in Kansas with a car driven by Nancy Evans who was making a trip in the course and scope of her work for Fontastik. Russell sued Evans, but not Fontastik. American States intervened, but by the time it did, the statute of limitations had expired for suing Fontastik. Recognizing that the limitations period had expired, the circuit court still allowed American States to assert a third-party action against Fontastik on the notion that American States had an independent claim for "implied indemnity" which accrued before the statute of limitations expired. We reverse the circuit court's judgment.

Russell sued Evans on October 7, 1992, in Missouri circuit court. On September 2, 1993, the circuit court granted a request by American States to intervene in the lawsuit. American States contended that Evans and Russell were both at fault.

In the meantime, Evans' insurer, Hartford Casualty Insurance Company, offered to Russell the full amount of Evans' policy ($100,000). Kansas law provided that if American States wanted to protect its right to subrogation of Russell's claim, it had to substitute its own payment of $100,000 to Russell for that offered by Hartford.[1] American States did this. On July 29, 1994, American States gave Russell $164,000 to satisfy his full claim pursuant to its under-insured motorist coverage.

American States asked the circuit court for leave to file a cross-claim against Evans and a third-party petition against Fontastik. The circuit court granted the requests on August 19, 1994. American States asserted that Evans and Fontastik were liable to it for subrogation and indemnification for the money it paid to Russell.

Fontastik moved to dismiss on the ground that American States' third-party petition did not state a claim for indemnity. It later asserted that American States' action exceeded the two-year limitations period set by

1. Kansas statute 40–284(f) said, "If a tentative agreement to settle for liability limits has been reached with an underinsured tortfeasor, written notice must be given by certified mail to the underinsured motorist coverage insurer by its insured.... Within 60 days of receipt of this written notice, the underinsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The underinsured motorist coverage insurer is then subrogated to the insured's right of recovery to the extent of such payment and any settlement under the underinsured motorist coverage."

Kansas law.[2] Fontastik contended that the Kansas statute of limitations applied to American States' third-party petition by virtue of § 516.190, RSMo 1994.[3] The circuit court overruled Fontastik's motions. It reasoned that, although American States' petition was beyond the limitations period, American States still had an independent tort action for "implied indemnity" for which the statute of limitations had not expired.

On September 18, 1995, the circuit court entered judgment for American States against Evans and Fontastik, jointly and severally, for $152,702. The circuit court ordered that Fontastik receive credit for Hartford's payment to American States of $100,000, minus $1298 which Hartford had already paid for collision damages. It ordered Evans and Fontastik to pay $54,000.[4]

Fontastik contends that the circuit court erred in concluding that American States had an independent tort claim for "implied indemnity." We agree.

■ American States argues that because it was obligated to pay Russell all of his claim it had an independent action for implied indemnity against Russell's tortfeasors. American States asserts that in Kansas a claim for implied indemnity "arises when one party without fault is compelled to pay for the tortious acts of another." *Bick v. Peat Marwick and Main*, 14 Kan.App.2d 699, 799 P.2d 94, 102 (1990). This doctrine is not applicable to this case.

■ This doctrine applies only when the duty discharged by the first party is identical to the duty owed by the second party. The first party must be discharging an obligation owed by the second party. *See Haysville U.S.D. No. 261 v. GAF Corporation*, 233 Kan. 635, 666 P.2d 192 (1983).

■ In the *GAF* case, GAF contracted with the Haysville school district to guarantee the materials used to re-roof two school buildings. When the roofs leaked, the district sued GAF for breach of its guarantee. GAF impleaded the architects, the roofing contractor and the manufacturer of the roof insulation material as third-party defendants. The Supreme Court of Kansas granted the third-party defendants' motions for summary judgment against GAF's third-party action. Recognizing the principle set out in *Bick, id.*, 666 P.2d at 199, the Supreme Court concluded that it did not apply because GAF's liability to the district resulted from contract to which it voluntarily made itself liable under specified conditions. The court reasoned that GAF was wrongly attempting to apply implied indemnity to a contract case:

> The difference ... is that a breach of contract is a failure of performance of a duty arising under or imposed by agreement, whereas [implied indemnity] is a violation of a duty imposed by law.... Where there is a breach of a duty imposed by law ... one is allowed to join all wrongdoers, determine the wrongdoers' proportionate shares of the damages, and require each wrongdoer to pay his own proportionate share of the damages either to the injured party or under proper circumstances to allow a wrongdoer who has paid more than his proportionate share by settlement to the injured party, to recover back from the nonpaying wrongdoers, according to the nonpaying wrongdoers' percentages of fault.

> GAF entered into guarantee contracts with the school district; the third-party defendants are not parties to these contracts. A guarantee is a contract between two or more persons, founded upon consideration, by which one person promises to answer to another for the debt, default or miscarriage of a third person, and in a legal sense, has relation to some other

2. Kansas statute 60–513(a) said, "The following actions shall be brought within two years: ... ■ An action for injury to the rights of another, not arising on contract, and not herein enumerated."

3. That statute said, "Whenever a cause of action has been fully barred by the laws of the state ... in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state."

4. We do not know from this record why this amount was not $64,000, except that the parties stipulated that American States' total damages was $152,702. Subtracting $98,702 from this amount left $54,000.

contract or obligation with reference to which it is a collateral undertaking. . . . If GAF is forced to pay under the agreement it has the right of subrogation against those whose fault actually caused the damage to occur to the roofs in a separate action. GAF has a right to substitute itself in the place of the school district.

*Id.* at 201–02.

The same reasoning applies to American States' action. It made itself liable to Russell in contract to pay him for damages suffered in an automobile accident for which the other person had insufficient insurance. American States' obligation to pay Russell resulted from its voluntarily entering into this agreement. Because any obligation by Fontastik to Russell resulted from tort, American States did not have a right of implied indemnity to recover from Fontastik the payments it made to Russell in fulfillment of its contractual obligations.

American States asserts repeatedly in its brief that Kansas statutes 40–284 and 40–287 gave it the right to seek indemnity from Fontastik. This is simply wrong. These statutes gave American States subrogation rights only.

American States' confusion apparently stems from its mistaken belief that the statutes required it to pay Russell for any damages not covered by Evans' and Fontastik's insurers. All these statutes did was set the conditions for when and how American States was to pay under-insured motorist benefits. The statutes did not mandate that American States provide under-insured motorist coverage, but, having done so willingly, the statutes governed the conditions of that coverage.

American States' situation is a far cry from that in *Bick*, 799 P.2d at 94, where a taxpayer was obligated to pay fines to the Internal Revenue Service as a result of his accountants' negligent preparation of his tax returns. The taxpayer did not voluntarily agree to pay for the accountants' negligence.

That he had to pay for another's wrongdoing was inequitable.

We find nothing inequitable about requiring American States to pay for what it has obligated itself to pay. It agreed to assume obligation for any unpaid damages imposed on Russell by another's negligent operation of a motor vehicle. Implied indemnity has nothing to do with this case.

■ Finally, American States asserts that even if we were to conclude that it did not have an independent claim for implied indemnity, the circuit court erred in concluding that the statute of limitations for its third-party petition against Fontastik for subrogation had expired. American States contends that Missouri law should govern the application of the statute of limitation. It argues that, pursuant to Missouri law, a third party petition is a separate and distinct claim from the original claim and the statute of limitations does not begin to run on a third party petition until judgment is rendered in favor of the original plaintiff. *See State ex rel. Hilker v. Sweeney*, 877 S.W.2d 624 (Mo. banc 1994).

■ Section 516.190, however, says, "Whenever a cause of action has been fully barred by the laws of the state . . . in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." As held by the Supreme Court of Kansas, in *Farmers Insurance Company, Inc. v. Farm Bureau Mutual Insurance Company, Inc.*, 227 Kan. 533, 608 P.2d 923, 928 (1980):[5]

The insurer's right of subrogation against third persons causing the loss paid by the insurer to the insured is derived from the insured alone. Consequently, the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. The rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place

**5.** This case dealt with Kansas statutes concerning personal injury protection benefits; however, the same analysis is applicable to this case.

of the insured and succeeds to whatever rights he may have in the matter. Therefore, any defense which a wrongdoer has against the insured, such as the statute of limitations, is good against the insurer subrogated to the rights of the insured.

Russell's right to sue Fontastik had been fully barred by Kansas' two-year statute of limitations; therefore, American States' right to sue Fontastik had also expired. American States' contention is without merit.

The circuit court should have granted Fontastik's motion to dismiss. We reverse its judgment and remand so that it can enter an order dismissing American States' action against Fontastik.

LAURA DENVIR STITH, J., concurs [6].

---

6. Although Judge Berrey participated in oral arguments and concurred with the result, he did not review this opinion before hand down. He was not available because of illness.