**OLD COLONY VENTURES I, INC., Plaintiff,**

**v.**

**SMWNPF HOLDINGS, INC., Defendant.**

**No. 95–2050–JWL.**

United States District Court, D. Kansas.

April 18, 1996.

Gregory L. Musil, Steven D. Ruse, Shughart, Thomson & Kilroy, Overland Park, KS, P. John Brady, James C. Sullivan, Shughart, Thomson & Kilroy, Kansas City, MO, for Old Colony Ventures I, Inc., Rist Group, Inc.

Robert P. Wray, Roy R. Darke, Jerald S. Meyer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, Renana B. Abrams, Armstrong, Teasdale, Schlafly & Davis, Olathe, KS, for SMWNPF Holdings, Inc., Sheet Metal Workers National Pension Fund, Arthur Moore, Alan J. Chermack, Ronald Palmerick, Matthew B. Hernandez, Bruce J. Stockwell, Robert Custer, Robert T. Stringer, Carl Moore, Robert J. Fanning, Clinton O. Gowan, Jr.

Gordon D. Gee, Lynne C. Kaiser, Laurilyn A. Goettsch, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, for Merrill Lynch Pierce Fenner & Smith, Inc.

Roy R. Darke, Jerald S. Meyer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, John E. Ivan, Shawnee Mission, KS, Jennifer L. Lewis, John Ivan Law Office, Shawnee Mission, KS, for Robert B. Francis.

Steven D. Ruse, Shughart, Thomson & Kilroy, Overland Park, KS, P. John Brady, James C. Sullivan, Shughart, Thomson & Kilroy, Kansas City, MO, for Rist Group Inc.

James C. Wirken, Michael S. Jones, The Wirken Group, P.C., Kansas City, MO, for Holland Corporation.

John E. Ivan, Jennifer L. Lewis, John Ivan Law Office, Shawnee Mission, KS, for Woodland Hills Joint Venture.

*MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

This controversy arises from an unsuccessful general partnership in Kansas, the Woodland Hills Joint Venture (WHJV). The case involves multiple parties and a myriad of claims. Presently before the court are cross motions for summary judgment by SMWNPF Holdings (Holdings) and the Holland Corporation (Holland) (Docs. # 213 and 215). Holdings and Holland have stipulated that the sole issue raised by the motions is as follows:

If the real property described as the Woodland Hills Golf Course Project is sold through a judicially ordered foreclosure sale, which party, [Holdings] or Holland, shall receive priority for payment of the proceeds resulting from the foreclosure sale of the Project, assuming, but not deciding, the validity of either party's lien claims or rights to foreclose.

For the reasons set forth below, the court reaches the following conclusions. Holdings's original mortgage has priority over Holland's mechanic's lien. Holland's mechanic's lien has priority over Holdings's modified mortgage. As a result, both motions are granted in part and denied in part.

I. *Facts*

For purposes of these motions, Holdings and Holland have stipulated to the following facts. WHJV, a general partnership, was formed on February 20, 1992 by Old Colony Ventures I, Inc. and Holdings, each of which took a 50 percent ownership interest. WHJV executed in favor of Holdings a promissory note and a mortgage securing future advances (mortgage), which was filed on April 2, 1992. The original principal amount of the promissory note was $9,000,000. The money from the loan was to be used to develop the Woodland Hills project.

A little over one year later, April 8, 1993, WHJV and Holdings entered into a modification of the promissory note and mortgage. The modification increased the principal amount of Holdings's loan to $9,500,000. The modified mortgage was filed on April 12, 1993. Holdings has advanced at least

$9,500,000 under the promissory note and mortgage.

On October 5, 1992, Holland and Lenexa Golf Partners, L.P. (Lenexa Golf) entered into a written contract for the construction of five lakes and dams upon property owned by WHJV. Lenexa Golf was a Kansas limited partnership originally contemplated to be the owner, developer, and operator of the golf course at the Woodland Hills project. On September 18, 1992, Holland began work on the contract. Holland filed a lien for this work on May 2, 1994.

Pursuant to a contract between Holland and WHJV, Holland also agreed to perform certain miscellaneous work and improvements for the Woodland Hills project. Holland's work on this second contract began March 24, 1993. Holland filed a lien for this work on May 2, 1994 also.

## II. Standard for Summary Judgment

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemeyer v. Hamilton County Hosp.*, 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial,

it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

## III. Discussion

Under Kansas law, a future advances mortgage generally has priority from the date the mortgage was filed.[1] Thus, Holdings's original mortgage priority date is April 2, 1992. A mechanic's lien has priority from the date the work giving rise to the mechanic's lien began.[2] The earliest possible priority date of Holland's mechanic's lien is therefore September 18, 1992. Nevertheless, Holland maintains that it is entitled to

1. K.S.A. § 58–2336 provides that:
 Every mortgage or other instrument securing a loan upon real estate and constituting a lien or the full equivalent thereof upon the real estate securing such loan, according to any lawful or well recognized practice, which is best suited to the transaction, may secure future advances and the lien of such mortgage shall attach upon its execution and have priority from time of recording as to all advances made thereunder until such mortgage is released of record: Provided, That the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage.
 As stipulated by the parties, for purposes of this motion, the court is "assuming, but not deciding, the validity of either party's lien claims."

2. K.S.A. § 60–1101 reads as follows:
 Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a con-

tract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same. The lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. When two or more such contracts are entered into applicable to the same improvement, the liens of all claimants shall be similarly preferred to the date of the earliest unsatisfied lien of any of them.
The court does not need to determine the applicability of the final sentence of K.S.A. § 60–1101 because work on both contracts began after the filing of the mortgage and before its modification. For convenience, the court will refer to the mechanic's liens in the singular.

priority under the doctrine of equitable subrogation, the language of the joint venture agreement forming WHJV and the Kansas Uniform Partnership Act. Alternatively, Holland contends that even if its mechanic's lien is subordinate to Holdings's original mortgage, it has priority over Holdings's modified mortgage. The court rejects Holland's arguments for priority over the original mortgage but agrees that the mechanic's lien does have priority over Holdings's modified mortgage.

### A. *Equitable Subrogation*

 "Subrogation is the right of one who has paid an obligation which another should have paid to be indemnified by the other." *Neises v. Solomon State Bank*, 236 Kan. 767, 696 P.2d 372 (1985); *see FSLIC v. Huff*, 237 Kan. 873, 883, 704 P.2d 372, 380 (1985); *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 646, 666 P.2d 192, 202 (1983); *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 206, 597 P.2d 622, 629 (1979); *Criss v. Folger Drilling Co.*, 195 Kan. 552, 556, 407 P.2d 497, 500–01 (1965). In Kansas, the concept "is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." *Fenly v. Revell*, 170 Kan. 705, 708, 228 P.2d 905, 908 (1951). Kansas recognizes both conventional and equitable subrogation. *Haysville U.S.D. No. 261*, 233 Kan. at 646, 666 P.2d at 202; *Hartford Fire Ins. Co.*, 226 Kan. at 206, 597 P.2d at 629; *United States Fidelity and Guaranty Co. v. First State Bank of Salina*, 208 Kan. 738, 749, 494 P.2d 1149, 1157 (1972); *Fenly*, 170 Kan. at 708, 228 P.2d at 908. Although conventional subrogation is based on contract, equitable subrogation "arises by operation of law without regard to any contractual relationship." *Fenly*, 170 Kan. at 709, 228 P.2d at 908. Relying on these principles, Holland asserts that its mechanic's lien should have priority over Holdings's mortgage. The court disagrees.

 Holland's subrogation argument is strained. In effect, Holland contends that, by its labor, it has "paid" the debt WHJV owes to it. Because Holdings is a partner, Holland continues, it is liable for WHJV's debt to Holland. Holland concludes it has paid a debt for which Holdings is responsible and is therefore entitled to subrogation.

Under Holland's argument, every service provider is entitled to subrogation. That is, every service provider is entitled to step in the shoes of its debtors. The court does not believe that the doctrine of subrogation, even when liberally construed, encompasses Holland's argument. Moreover, even if subrogation were somehow an appropriate theory on which to proceed, it would not grant Holland the relief it seeks. By subrogation, Holland would assume whatever rights Holdings had regarding the debt WHJV owed to Holland. *Haysville U.S.D. No. 261*, 233 Kan. at 646, 666 P.2d at 202; *Hartford Fire Ins. Co.*, 226 Kan. at 206, 597 P.2d at 629; *Criss*, 195 Kan. at 556, 407 P.2d at 500. Whatever rights those might be, they do not include the right to first priority for payment of proceeds resulting from a foreclosure sale of WHJV's real property. In short, Holland's argument is wholly without merit.

### B. *Joint Venture Agreement*

██ Holland also claims priority on the basis of the joint venture agreement. Specifically, Holland relies on paragraph 3.1 which reads as follows:

> *Term of the Venture.* The effective date for the commencement of the term of the Venture is the date hereof and the term shall continue until the earlier of December 31, 2011 or the first date on which (i) all assets and property of the Venture have been reduced to cash or cash equivalents and (ii) all liabilities and obligations of the Venture have been satisfied in full.

The court does not believe that this language compels summary judgment on behalf of Holland.

By its terms, paragraph 3.1 refers to the termination of partnership. Priority at termination, however, is not the question before the court; priority to proceeds from a foreclosure sale is. Nothing in the parties' stipulated facts indicates whether or not the "real

property described as the Woodland Hills Golf Course Project" is all the assets and property of WHJV.

More importantly, even if the real property at issue is all the assets and property of the joint venture, paragraph 3.1 does not grant Holland's mechanic's lien priority over Holdings's mortgage. The second requirement to termination before 2011 is the satisfaction of all liabilities and obligations. Although Holland is correct that its mechanic's lien is one such obligation, so too is Holdings's promissory note. Nothing in the language of paragraph 3.1 indicates that Holland's mechanic's lien should have priority over a previously recorded mortgage. Nothing in the joint venture agreement mandates deviation from the general priority rules established by K.S.A. §§ 58–2336 and 60–1101 when the joint venture's obligations are paid. Thus, the language of the joint venture agreement is not a basis to prioritize Holland's mechanic's lien over Holdings's original mortgage.

### C. *Kansas Uniform Partnership Act*

■ As its final argument for the priority of its mechanic's lien over the original mortgage, Holland cites the Uniform Partnership Act, K.S.A. § 56–301 *et seq.* Holland specifically points to K.S.A. § 56–340, which reads as follows:

> In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary: ...
>
> (b) The liabilities of the partnership shall rank in order of payment, as follows:
>
> (1) Those owning to creditors other than partners;
>
> (2) those owing to partners other than for capital and profit; ....

The court, however, finds this statute inapplicable to the present issue.

Like paragraph 3.1 of the joint venture agreement, K.S.A. § 56–340 applies only after dissolution of the partnership. As noted above, there is no evidence in the record from which the court can conclude that a foreclosure sale of the real property known

as the Woodland Hills Golf Course Project will result in the dissolution of WHJV.

Moreover, even if the foreclosure results in dissolution of the partnership, the mechanic's lien will not have priority over the mortgage. According to paragraph 3.1 of the joint venture agreement, if the foreclosure results in dissolution of the partnership, the foreclosure must have caused all assets and property of the partnership to be reduced to cash and all liabilities and obligations of the partnership to be satisfied. Thus, payment of all the partnership's liabilities and obligations is a prerequisite to termination or dissolution of the partnership. K.S.A. § 56–340, by its terms, applies only to the "settling [of] accounts between the partners *after* dissolution." Due to paragraph 3.1, payment of both the mechanic's lien and the mortgage must occur before dissolution. K.S.A. § 56–340 therefore has no bearing on the priority issue before the court.

### D. *Modified Mortgage*

■ As its final, alternative argument, Holland maintains that regardless of the priority between the mechanic's lien and the advances made pursuant to the original mortgage, the mechanic's lien has priority over advances made pursuant to the modified mortgage filed on April 12, 1993. Holdings contends that advances made pursuant to the modified mortgage have priority from the date on which the original mortgage was filed. The court agrees with Holland.

According to K.S.A. § 58–2336, a mortgage may "secure future advances," but "the lien of such mortgage shall not exceed at any one time the maximum amount stated in the mortgage." The original mortgage filed by Holdings on April 2, 1992 contained the following future advances clause:

> This Mortgage is intended to, and shall, secure future advances, and the total principal amount of Obligations secured by this Mortgage, excluding accrued interest (whether or not added to principal), costs, fees, charges, and advances by Lender for the protection of the Premises and/or for other purposes authorized under the provisions of this Mortgage, but including such

future advances, shall not exceed Nine Million and No/100 Dollars ($9,000,000). Mortgage at 2. Thus, according to the plain language of K.S.A. § 58–2336 and the mortgage, the lien of the original mortgage could not exceed $9,000,000.

Such a construction is consistent with the Kansas Supreme Court's statements regarding future advances clauses. In both *First National Bank v. Fink*, 241 Kan. 321, 326, 736 P.2d 909, 912 (1987) and *Emporia State Bank & Trust Co. v. Mounkes*, 214 Kan. 178, syl. 3, 519 P.2d 618, 619 (1974), the court stated that future advances clauses "are not ... highly regarded in equity and shall be carefully scrutinized and strictly construed." Strictly construed, the future advances clause in Holdings's mortgage supports a maximum lien of $9,000,000.

Such a construction is also consistent with the Kansas Supreme Court's treatment of K.S.A. § 58–2336. *Fink* involved a priority battle between a first, future advances mortgage and a second mortgage. The court granted priority to the first mortgage but stated that the priority of the lien was "limited to the principal of the [first] mortgage, ... plus interest thereon, as required by K.S.A. § 58–2336." Four years later in *Mark Twain Kansas City Bank v. Cates*, 248 Kan. 700, 711, 810 P.2d 1154, 1162 (1991), the court stated "K.S.A. § 58–2336 limits the lien to the maximum amount stated in the mortgage." This language suggests that the Kansas Supreme Court would apply a plain meaning construction of K.S.A. § 58–2336 to the present question, the same approach taken by this court.

Finally, if advances made pursuant to a loan-limit-increasing modification have priority from the filing date of the original mortgage, then all subsequent lienholders would be at the mercy of the creditor holding a previously recorded mortgage with a future advances clause. Potential subsequent creditors would have no ability to judge the amount of security a piece of property could provide them. Conservative subsequent creditors would likely refuse to issue a loan secured by that collateral. Such a result could constrict the amount of credit to which a consumer would otherwise be entitled.

The court must assume that by the plain language of K.S.A. § 58–2336 the legislature made a public policy determination to avoid such a result. The court therefore finds that advances made pursuant to the modified mortgage have priority from April 12, 1993, the date the modified mortgage was filed, rather than from the filing date of the original mortgage.

### IV. Conclusion

Under Kansas law, if the real property described as the Woodland Hills Golf Course Project is sold through a judicially ordered foreclosure sale, priority to the proceeds resulting from the foreclosure sale is as follows: first, Holdings has priority to $9,000,000 of proceeds; second, Holland has priority to the amount necessary to cover its mechanic's lien; and third, Holdings has priority to $500,000. In reaching this conclusion, the court assumed, but did not decide, the validity of either party's lien claims or rights to foreclose.

**IT IS THEREFORE BY THE COURT ORDERED** that Holdings's motion for partial summary judgment on priority of claimed mechanic's liens of the Holland Corporation (Doc. # 213) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Holland's cross-motion for partial summary judgment of the Holland Corporation for judicial determination of the issue of priority between SMWNPF Holdings, Inc. and the Holland Corporation to payment from any foreclosure proceeds (Doc. # 215) is granted in part and denied in part.

**IT IS SO ORDERED.**